UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark Joel ANTHONY, Defendant–
Appellant.

No. 90–5039.

United States Court of Appeals,
Tenth Circuit.

Sept. 11, 1991.

James L. Swartz, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., with him, on the brief), Tulsa, Okl., for plaintiff-appellee.

Craig Bryant, Asst. Fed. Public Defender, Tulsa, Okl., for defendant-appellant.

Before SEYMOUR, MOORE and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Mark Anthony and five others were charged with conspiring with each other,

and others, from August 1, 1988, to July 20, 1989, in Tulsa, Oklahoma, in violation of 21 U.S.C. § 846 as follows: (1) to knowingly and intentionally distribute a mixture or substance which contained cocaine base, a Schedule II controlled substance, in an amount in excess of fifty grams, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii); and (2) to knowingly and intentionally possess with an intent to distribute cocaine in an amount in excess of five hundred grams, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii).

Anthony was jointly tried with four of the other five defendants and the jury convicted him of conspiring to knowingly and intentionally distribute in excess of fifty grams of a mixture or substance which contained cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(iii). Anthony was sentenced to imprisonment for 360 months. Anthony appeals.

On appeal, Anthony urges three grounds for reversal: (1) insufficient evidence to support his conviction; (2) error by the district court in excluding evidence concerning Willie Junior Louis, a key government witness; and (3) error by the district court in its application of the Sentencing Guidelines.

The background facts need not be developed in great detail. On May 4, 1989, officers from the Tulsa, Oklahoma police department searched the apartment of Willie Junior Louis with the latter's consent. Although no drugs were found, the search did disclose various drug paraphernalia, ammunition and a Molotov cocktail.

Louis told the police, and later testified at trial, that during his absence from his apartment in March, 1989, at a time when he left his apartment in charge of his girlfriend, the defendants, or at least most of them, "moved" into his apartment, and for the ensuing five or six weeks conducted a "crack cocaine" business out of his apartment. He described how the defendants, including Anthony, would cut up rock cocaine with a razor blade, sell it to customers who came to the apartment, and give it to "runners," often juveniles, who would then sell it to passing motorists outside the apartment. Louis further testified that these "runners" would later return with monies received from the sales made. The government called other witnesses whose testimony tended to corroborate that of Louis. The defendants called several witnesses by way of defense, although Anthony himself elected not to testify.

■ As indicated, Anthony's first argument is that the government's evidence was legally insufficient to support his conviction. In this regard, counsel initially contends that the government's evidence did not show he conspired with the other named defendants. Counsel concedes that the testimony of Suzanne Atkins and her son, Lomas Atkins, indicated that Anthony had distributed cocaine to one of Suzanne Atkins' other sons, but argues that such does not tend to prove that he conspired with the other named defendants to distribute cocaine base.

It is true that Louis testified that when he returned to his apartment in Tulsa from Oklahoma City in May, 1989, Anthony was *not* one of the persons he found in his apartment. However, Louis indicated that Anthony later did appear in his apartment and participated in the crack cocaine distribution therefrom. According to Louis, Anthony was one of the individuals he observed cutting, weighing and bagging crack cocaine in his apartment. Louis went on to testify that on one occasion, Anthony, while cutting a piece of crack cocaine, inquired of Louis as to whether the cocaine could get into his system through his pores as a result of the cutting process.

In our view, the evidence was sufficient to show Anthony's conspiracy with Ward Price and the other named defendants. The suggestion by counsel that Louis' testimony was "inherently improbable" was a matter for the jury, and the jury obviously did not share counsel's view. And this entire case did not turn on Louis' testimony—there was some corroborating evidence.

■ Anthony was convicted of conspiring to distribute "a mixture or substance which contained cocaine base" in excess of

fifty grams. As a part of his insufficiency of the evidence argument, counsel contends that at trial, though there was much testimony about "crack" and "crack cocaine," there was no mention of "cocaine base." Hence, according to counsel, there was insufficient evidence to support a conviction for conspiring to distribute cocaine base. The foregoing argument was never made to the district court. Accordingly, such is not ground for reversal on appeal unless it constitutes plain error. *See* Fed.R.Crim.P. 52(b); and *United States v. Shelton,* 736 F.2d 1397, 1405–1406 (10th Cir.1984), *cert. denied,* 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed.2d 119 (1984).

None of the crack cocaine allegedly distributed by Anthony and his co-defendants was recovered. In other words, Louis' testimony related to past events. Hence, there was no forensic chemist to testify that he had analyzed substances given him. However, while perhaps no witness used the phrase "cocaine base," many used, and repeatedly, the words "cocaine" and "crack." In *United States v. Pinto,* 905 F.2d 47, 50 (4th Cir.1990), the Fourth Circuit held that "cocaine base" within the meaning of the statute at issue includes "cocaine freebase, commonly referred to as crack." *See also United States v. Metcalf,* 898 F.2d 43, 46–47 (5th Cir.1990); *United States v. Buckner,* 894 F.2d 975, 976 n. 1 (8th Cir.1990); and *United States v. Barnes,* 890 F.2d 545, 553 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990). At trial, all concerned apparently thought the words "cocaine" and "crack" and the phrase "cocaine base" were synonyms. Further, all the witnesses apparently well knew the substance being sold out of Louis' apartment. Under such circumstances, we find no plain error. *See United States v. Young,* 470 U.S. 1, 16–17 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985) (to find reversible plain error, the appellate court must be satisfied that the error not only affected substantial rights in a serious way, but also that the error had an unfair prejudicial effect on the jury's deliberations); *see also United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d

816 (1982); and *United States v. Atkinson,* 297 U.S. 157, 159, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936).

■ Although not the only government witness, Louis was a key witness. On direct examination, Louis admitted that he had previously been convicted for interstate transportation of a stolen motor vehicle, and that at the time of the search of his apartment he was on probation under a suspended sentence in a state court on a marijuana charge.

Ronny Goins, Louis' probation officer, was called as a defense witness and he testified that in April, 1989, he had met with Louis in the latter's apartment and that he had not seen any evidence of a drug operation, nor had Louis complained to him that one was being conducted out of his apartment. Goins brought with him Louis' probation file. A notation written thereon was "mentally unbalanced." Goins said he had not made the notation, which apparently was made by another probation officer, and presumably referred to Louis. The defendants, including Anthony, attempted to obtain the admission into evidence of this "mentally unbalanced" notation through Goins. The district court refused this offer, and counsel suggests that such constitutes reversible error. We disagree.

Whoever made this notation was presumably not an expert. However, Fed.R.Evid. 701 permits a lay witness to express an opinion if, *inter alia,* it is "rationally based on the perception of the witness." So if the author of the notation had been present at trial, he would not have been allowed to give his opinion until it had first been shown that such opinion was "rationally based on [his] perception." Such being the case, it would have been a bit incongruous to admit the notation, with no basis therefor, when the author was not present at trial.

In *McKenzie v. United States,* 266 F.2d 524 (10th Cir.1959), we said that "[b]efore a non-expert witness is competent to testify to the sanity or insanity of another person, he must show an acquaintance of such intimacy and duration as to clearly indicate

that his testimony will be of value in determining the issue." *Id.* at 526–27 (citing *Turner v. American Security & Trust Co.,* 213 U.S. 257, 260, 29 S.Ct. 420, 421, 53 L.Ed. 788 (1909)). *See also United States v. Madrid,* 673 F.2d 1114, 1123 (10th Cir. 1982), *cert. denied,* 459 U.S. 843, 103 S.Ct. 96, 74 L.Ed.2d 88 (1982); *United States v. Coleman,* 501 F.2d 342, 345 (10th Cir.1974); and *United States v. Kienlen,* 415 F.2d 557, 558 (10th Cir.1969). Such is apparently the general rule in the majority of jurisdictions. *United States v. Milne,* 487 F.2d 1232, 1235 (5th Cir.1973), *cert. denied,* 419 U.S. 1123, 95 S.Ct. 808, 42 L.Ed.2d 823 (1975). In *Milne,* the Fifth Circuit court stated that a lay witness should be required to testify regarding a person's unusual, abnormal or bizarre conduct before being permitted to express an opinion as to that person's insanity. *Id.* In our view, the district court did not abuse its discretion in refusing to admit into evidence the "mentally unbalanced" notation.

■ Anthony's remaining argument in this court is that in imposing sentence the district court did not comply with the Sentencing Guidelines. Prior to sentencing, a presentence report was prepared, and, as required by Fed.R.Crim.P. 32(c)(3), was given Anthony and his counsel. Counsel filed several specific objections to statements contained in the presentence report, the first of which was directed at the statement in the presentence report that "the organization was responsible for the distribution of at least seven (7) kilograms of crack-cocaine at various locations in the Tulsa area." * In response to those objections, the probation officer filed an addendum in which basically he stood by the challenged statements. At sentencing, the district court listened to the statements of counsel and, in effect, overruled the objections and accepted the report.

On appeal, Anthony complains that the district court did not follow the mandate of Fed.R.Crim.P. 32(c)(3)(D), which provides

that if a defendant challenges the factual accuracy of statements contained in the presentence report, "the court *shall,* as to each matter controverted, make (i) a finding as to the allegation or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." (emphasis added). That same rule also provides that a written record of such finding or determination shall be appended to the presentence report.

From the record before us it would appear that the district court did not make the findings or determinations required by Fed.R.Crim.P. 32(c)(3)(D). In *United States v. Alvarado,* 909 F.2d 1443, 1445 (10th Cir.1990), decided after sentence was imposed in the instant case, we held that Fed.R.Crim.P. 32(c)(3)(D) requires that when a defendant challenges information in his presentence report, the district court must either make a factual finding regarding the accuracy of the challenged information or expressly state that in imposing sentence he is not taking into consideration the challenged statement. In *Alvarado,* we remanded for resentencing, commenting that such findings or determinations must be made not only for use by the correctional system, but also so that "we know the facts upon which the district judge relie[d]." *Id.* at 1445. *See also United States v. Forker,* 928 F.2d 365 (11th Cir.1991) (citing *Alvarado*).

Anthony's objections to the presentence report were not perfunctory but were specific. The court did not comply with Fed. R.Crim.P. 32(c)(3)(D) and its counterpart, U.S.S.G. § 6A1.3.

Judgment of conviction affirmed, but sentence is vacated and case remanded for resentencing.

■

---

* The amount of the drug involved bears on the base offense level. Insofar as our review of the record has revealed, there is no indication, either in the trial transcript or in the presentence report, that Anthony was involved in the con-

spiracy in question prior to March, 1989. Anthony was arrested on May 10, 1989, and it would appear that he remained in custody during the remainder of the life of the conspiracy.