UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas A. BURGER, Defendant–
Appellant,

National Association of Criminal
Defense Lawyers, Inc.,
Amicus Curiae.

No. 91–3267.

United States Court of Appeals,
Tenth Circuit.

May 21, 1992.

Richard L. Hathaway, Asst. U.S. Atty. (Lee Thompson, U.S. Atty., with him on the brief), for plaintiff-appellee.

Samuel Rosenthal of Curtis Mallet–Prevost, Colt & Mosle, Washington, D.C. (Dennis Moore of Moriarty, Erker & Moore, Overland Park, Kan., of counsel), for defendant-appellant.

James A. Plaisted (Judith A. Hartz with him on the brief) of Walder, Sondak, Berkeley & Brogan, Roseland, N.J., for amicus.

Before McKAY and BARRETT, Circuit Judges, and BRIMMER *, District Judge.

BARRETT, Senior Circuit Judge.

Thomas A. Burger appeals a final order of the district court accepting his guilty plea, denying his motion for recusal, sentencing him to twelve years imprisonment

---

* The Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation.

and ordering him to immediately pay six million dollars in restitution.

On January 10, 1991, Burger and six others were charged in a twenty-five count indictment with various conspiracy and bank fraud crimes leading to the failure of Peoples Heritage Savings and Loan of Salina, Kansas (Peoples), a federally chartered and insured savings and loan. Burger served on the Board of Directors and was Chief Lending Officer for Peoples at all times material herein.

Prior to trial, Burger filed a petition to plead guilty to Count I, conspiracy ("[c]ommencing at least as early as 1984, the exact date being unknown to the grand jury, and continuing until the return of this indictment"), and Counts 16, 18, 19, and 20, substantive counts relating to the misuse of a five million dollar line of credit granted to one James L. Bosler.

Burger pled guilty to Counts 1, 16, 18, 19, and 20. During the plea hearing, Burger acknowledged that: by pleading guilty he was admitting all the facts alleged in the charges in the indictment; the maximum term of imprisonment for each count could be five years; the sentences could be imposed consecutively; the court could impose restitution; the only reason he was pleading guilty to Counts 1, 16, 18, 19, and 20 was because he was guilty of the charges contained therein; and that he understood there was no limitation on the information the court could consider at the time of sentencing concerning his (Burger's) background, character, and conduct, provided that the information was reliable.

Burger's presentence report related that: he would be sentenced in accordance with the Sentencing Reform Act of 1984 and amendments thereto, (Appendix of Appellant, Vol. II, p. A00385); the "[n]et total of damages reflecting actual losses to RTC [Resolution Trust Corporation] from Mr. Burger's involvement total $127,665,742," *id.* at p. A00402; Burger had prepared a financial worksheet which reflected a negative net worth of $34,862,594.90. *Id.* at p. A00418. The report set forth a guideline imprisonment range of 135 to 168 months, and reviewed the general principles of res-

titution but did not suggest a specific amount of restitution.

After receiving the report, Burger filed a motion to be sentenced under the guidelines effective December, 1988, or, alternatively, to be allowed to withdraw his guilty plea. The district court denied Burger's motion, finding: Burger, by pleading guilty to Count 1, pled guilty to a crime which occurred subsequent to the effective dates of the guideline amendments of November, 1989, and November, 1990; although Burger was forced to resign from Peoples in 1988, his "participation and ownership in the joint ventures, corporations, partnerships and property which was obtained with money illegally defrauded from Peoples ... continued unimpeded until the issuance of the Indictment," (Appendix of Appellant, Vol. I, p. A00052); Burger's forced resignation did not amount to an affirmative withdrawal or disavowal of the conspiracy; Burger's statement that his role in the conspiracy terminated in December, 1988, did not require that the court make such a factual finding for purposes of sentencing; and to allow a defendant to avoid the application of the amended guidelines by fashioning his plea would be to allow him to amend the indictment. The court also found that Burger's motion to withdraw his plea should be denied because he had not asserted his innocence but, instead, was upset by the severity of the sentence recommended in the presentence report.

Burger was sentenced under the amended sentencing guidelines to twelve years imprisonment and ordered to immediately pay six million dollars in restitution to the RTC. Burger subsequently filed motions requesting: reconsideration of the court's order denying his motion to be sentenced under the December, 1988, guidelines or, alternatively, to be allowed to withdraw his guilty plea; dismissal of the indictment; a *Franks* hearing; and recusal of the district court.

Within his memorandum in support of his motion for recusal, Burger alleged: the day after his sentencing, the Salina Journal reported that his sentence and court or-

dered restitution had been instigated by a letter from FDIC Chairman Seidman to the district court; Seidman's letter requested that the district court order Burger to pay restitution in the amount of six million dollars; prior to seeing the article, neither Burger nor his counsel had any knowledge that Seidman had written the district court; the FDIC sent the court a second letter, also undisclosed to Burger, which stated that Burger's ex-girlfriend had been brutally raped and that Burger had threatened to "break her legs" if she went to the authorities; the letters constituted improper *ex parte* communications between the government and the district court; immediate recusal was required in view of the district court's failure to disclose the *ex parte* communications.

In denying Burger's motions and affirming his sentence, the district court found: no *ex parte* communications occurred between the prosecution and the court; the letters complained of were letters from victims and were not letters from the prosecution; the letters were part of the victim impact aspect of the presentence report which the probation office is required to investigate; such letters are routinely received by the court; the allegations contained in such letters are then either excluded or included in the presentence report so that the parties have a chance to dispute or refute any factual allegations and "[t]his was the manner in which the letters from the FDIC and its Chairman, L. William Seidman were handled." (Appendix of Appellant, Vol. II, p. A00282); the court's position with respect to restitution was spelled out in its July 31, 1991, order; the two letters were not used in determining Burger's sentence; Burger's sentence was based on the information contained in the presentence investigation report, as amended, and adopted by the court following two separate evidentiary hearings; and "[i]n addition, the court considered its per-

sonal knowledge derived from presiding over the lengthy trial of defendants' alleged co-conspirators." (Appendix of Appellant, Vol. II, p. A00285–286).

On appeal, Burger contends that: (1) the district court erred in refusing to recuse itself; (2) his plea should be vacated; (3) even if he is not entitled to withdraw his plea, his sentence must be vacated as a result of procedural errors affecting the sentence; and (4) even if the court did not err in the procedures employed in sentencing him, the sentence itself is unlawful and must be vacated.

### I.

■ Burger contends that the district court erred in refusing to recuse itself under 28 U.S.C. §§ 144[1] and 455[2].

Burger argues that recusal was required here under § 144 after the court received and relied on two *ex parte* letters from Chairman Seidman and the FDIC. Burger argues that "[e]ven if the FDIC and the RTC were not part of the prosecution team—although they surely were in this case—," (Brief of Appellant at p. 12), recusal was still required because the FDIC and RTC are part of the government. Burger argues that the court's bias was clearly established by the fact that the court utilized language from the FDIC letter in its restitution order. Burger also argues that recusal was required under § 455 because the "appearance of impartiality is virtually as important as the fact of impartiality," quoting, *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358, 1361 (10th Cir.1977).

The government responds that Burger's attempt to have the court recuse itself "is a thinly veiled effort to remove a judge who has imposed a sentence that is not popular with the defendant." (Brief of Appellee at p. 15). The government observes that the

**1.** § 144 provides in part: Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

**2.** § 455 provides in part: (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

district court specifically found that the "two letters were not used by the court in determining the sentences. Rather, the sentences were based upon the information contained in the Presentence Investigation Report, as amended and adopted by the court following two separate evidentiary hearings ... [and] personal knowledge derived from presiding over the lengthy trial of defendants' alleged co-conspirators." (Appendix of Appellant, Vol. II, at p. A00285–286). The government also observes that the district court stated that its restitution order of six million dollars "was the amount which had been promoted by the probation office ... [in a] presentence conference with the probation staff." *Id.* at p. A00282, n. 2.

▉ The decision to recuse is committed to the sound discretion of the district court. *Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir.1987). We review the denial of a motion to recuse only for abuse of that discretion. *Weatherhead v. Globe International, Inc.*, 832 F.2d 1226, 1227 (10th Cir.1987); *Varela v. Jones*, 746 F.2d 1413, 1416–1417 (10th Cir.1984).

▉ Under § 144, the affidavits filed in support of recusal are strictly construed against the affiant and there is a substantial burden on the moving party to demonstrate that the judge is not impartial. *Weatherhead v. Globe International Inc.*, *supra.* Conclusions, rumors, beliefs and opinions are not sufficient to form a basis for disqualification. *Hinman v. Rogers*, *supra*, at p. 939. Under § 455, the test is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *Id.* Moreover, "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Id.*

Applying these standards to the facts herein, we hold that the district court did not err in refusing to recuse. We do so mindful that although the court stated that it did not rely on the letters, its order of restitution would indicate otherwise. However, this does not, *ipso facto*, establish prejudice or bias or undermine the court's

impartiality, when, as here, the court specifically stated that the amount of restitution had "been promoted by the probation office." Inasmuch as a probation officer is "a neutral, information-gathering agent of the court [and] not an agent of the prosecution," *United States v. Johnson*, 935 F.2d 47, 50 (4th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 609, 116 L.Ed.2d 632 (1991), who "assists the court in arriving at a just sentence," *Brown v. Butler*, 811 F.2d 938, 941 (5th Cir.1987), it was not improper for the court to rely on the probation office in determining restitution.

## II.

Burger contends that his plea should be vacated. He argues that his plea should have been rejected because he expressly refused to admit an essential element of Count I, i.e., that he participated in the conspiracy after December, 1988. Burger argues that he denied participating in the conspiracy after December, 1988, and there was no factual basis for finding he had engaged in a conspiracy which continued after that time. Burger also argues that his plea should have been vacated because he was misled as to which guidelines would be used and the maximum sentence allowable under the guidelines. Burger also argues that his plea should be vacated because the government breached the plea bargain by asking for restitution and a substantial jail term.

▉ A district court's denial of a motion to withdraw a plea of guilty is reviewed for an abuse of discretion. *United States v. Rhodes*, 913 F.2d 839, 845 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991). Although "[o]ne who enters a guilty plea has no right to withdraw it," *United States v. Hickok*, 907 F.2d 983, 985 (10th Cir.1990), quoting, *Barker v. United States*, 579 F.2d 1219, 1223 (10th Cir.1978), a district court may permit withdrawal of a plea prior to sentencing "upon a showing by the defendant of any fair and just reason." Fed. R.Crim.P. 32(d). The defendant bears the

burden of demonstrating a "fair and just reason." *United States v. Hickok, supra.*

We hold that Burger has failed to show a "fair and just reason" for withdrawing his plea. Contrary to Burger's assertions that his plea should be vacated because of his allegation that his participation in the conspiracy terminated in December, 1988, the district court specifically found that "although defendant Burger agreed not to continue his involvement with Peoples Heritage," he continued his "participation and ownership in the joint ventures, corporations, partnerships and property which was obtained with money illegally defrauded from Peoples ... [and his] participation continued unimpeded until the issuance of the Indictment." (Appendix of Appellant, Vol. I at p. A00052–53).

Burger's assertion that his plea should be vacated because he was misled as to which sentencing guideline would apply and the maximum sentence which he could receive is also without merit. A review of the April 23, 1991, plea hearing (Appellee's Supplemental Appendix, pp. 38–74) and the August 1, 1991, sentencing hearing (Appendix of Appellant, Vol. II, pp. A00305–375) clearly establish that Burger "was informed of and comprehended both the nature and consequences of his plea." *United States v. Jackson,* 950 F.2d 633, 637 (10th Cir.1991). Moreover, Burger's imprisonment of twelve years was well below the maximum term of five years for each count, or twenty-five years.

Similarly, Burger's assertion that his guilty plea should be vacated because the government breached the plea bargain and asked for restitution and a substantial jail term is not supported by the record. This argument, predicated on Burger's assertions that the FDIC and RTC were not victims but instead were part of the prosecution team, is specious.

Under the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. §§ 3579, 3580 (recodified at 18 U.S.C. §§ 3363, 3364), a sentencing court may order " 'a defendant convicted of an offense' to 'make restitution to any victim of such offense.' 18

U.S.C. § 3663(a)(1)." *United States v. Wainright,* 938 F.2d 1096, 1098 (10th Cir. 1991). Moreover, governmental agencies such as the FDIC and RTC qualify as victims under the VWPA. *See United States v. Smith,* 944 F.2d 618, 622 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992) (Federal Savings and Loan Insurance Corporation a victim); *United States v. Helmsley,* 941 F.2d 71, 101 (2nd Cir.1991), cert. denied, —— U.S. ——, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992) (Internal Revenue Service and State of New York victims); *United States v. Kirkland,* 853 F.2d 1243, 1246 (5th Cir.1988) (Farmers Home Administration a victim); *United States v. Sunrhodes,* 831 F.2d 1537, 1545–46 (10th Cir.1987) (Indian Health Service a victim); *United States v. Gallop,* 812 F.2d 1271, 1281 (10th Cir.1987) (Department of Housing and Urban Development a victim).

### III.

Burger argues that even if he is not entitled to withdraw his plea, his sentence must be vacated as a result of procedural errors affecting his sentencing. Burger argues that the receipt of the *ex parte* communications, without more, requires that he be resentenced; he should have, at a minimum, been afforded a hearing to challenge the truthfulness of the accusations; and the court erred in failing to resolve disputed findings under Fed. R.Crim.P. 32(c)(3)(D) prior to the imposition of his sentence.

#### a.

Burger contends that the receipt of the *ex parte* communications requires, without more, that he be resentenced. Burger argues that nothing could be more vicious and inflammatory than allegations by the FDIC and its chairman that he (Burger) had tampered with witnesses; was capable of paying six million dollars in restitution with money he was hiding overseas; was responsible for the brutal rape of a former girlfriend to silence her; and had laundered money through casinos.

Burger argues that no one can assume that the court could simply put such allegations out of its mind. Burger further argues that it is obvious that the court did rely on the material in the letters in deciding when he left the conspiracy, whether to grant restitution, in fashioning the order of restitution, and in deciding how much restitution was appropriate.

At the outset, we observe that the record on appeal is minimal and disorganized. It does not include a copy of Chairman Seidman's letter. Based on our limited record, we make the following assumptions with respect to the course of events commencing with Burger's plea of guilty, the development of the presentence report, and the utilization of the two letters in question.

Burger pled guilty on April 23, 1991. His presentence report was prepared on July 1, 1991. The presentence report set forth a sentencing guideline range of 133 to 165 months. The report reflected actual losses to the RTC from Burger's involvement to be $127,655,742. The report did not suggest a specific amount of restitution. Prior to sentencing, Burger's objections to the report were incorporated into an addendum to the report and submitted to the court.

After July 1, 1991, but prior to Burger's sentencing, the district court apparently received a letter from Chairman Seidman and a letter from the deputy general counsel for the FDIC (the FDIC letter). The court forwarded these letters to the probation officer in charge. Burger did not receive copies of these letters before sentencing. Prior to sentencing, the court conferred with the probation officer who "promoted" restitution in the amount of six million dollars. We observe that there is no evidence in the record to support immediate restitution.

Burger was sentenced on August 1, 1991. During sentencing, Burger was allowed to summarize each of his objections to the report. The court did not rule on Burger's objections prior to sentencing him. Rather, the court, after noting that "[w]e have them [findings] basically prepared, but I do not desire to take the time

of the Court to read them into the record at this time," [Appendix of Appellant, Vol. II, at p. A00360], stated that "they'll [findings] probably be mailed to you later today." *Id.*

The court then sentenced Burger to 144 months imprisonment and ordered him to immediately pay six million dollars in restitution to the RTC. The day after Burger was sentenced a local newspaper carried a story disclosing that Chairman Seidman had written the court requesting that Burger and co-defendant James Cruce pay fourteen million dollars in restitution to the RTC. Burger's post-sentencing motions were denied by the court. In denying Burger's motions, the district court specifically stated that "[t]he two letters in dispute were not used in determining the sentences." (Appendix of Appellant, Vol. II, at p. A00285).

Although the district court did not rely on the letters in sentencing Burger, it is clear that the probation officer relied on the letters in "promoting" the amount of restitution to be paid by Burger to the RTC. We agree with Burger that the utilization of the letters without disclosure to him was violative of Fed.R.Crim.P. 32.

Under Rule 32, "it is clear that the defendant and the government enjoy equal procedural entitlements." *Burns v. United States,* —— U.S. ——, 111 S.Ct. 2182, 2185 n. 4, 115 L.Ed.2d 123 (1991). In holding that a defendant was entitled to notice that a district court was contemplating departing upward from the guideline sentencing range based on a ground not previously identified for upward departure, the Court opined:

> As amended by the Sentencing Reform Act, Federal Rule of Criminal Procedure 32 provides for focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guideline sentence. Rule 32 frames these issues by directing the probation officer to prepare a presentence report addressing all the matters germane to defendant's sentence.... Rule 32(a)(1) provides that '[a]t the sentencing hearing, the court [must] afford the counsel for the defendant and the attorney for

the Government an opportunity to comment upon the probation officer's determination and other matters relating to the appropriate sentence.'

\* \* \* \* \* \*

... Rule 32 contemplates full adversary testing of the issues relevant to a Guidelines sentence and mandates that the parties be given 'an opportunity to comment upon the probation officer's determination....'

111 S.Ct. at pp. 2185–6.

No less a standard should be applied to the letters from Chairman Seidman and the FDIC. We hold that Burger is entitled to a resentencing during the course of which he shall have the opportunity to "comment upon [the letters in question and] the probation officer's determination and other matters relating to the appropriate sentence."

#### b.

■ Burger contends that he should have been afforded a hearing, at a minimum, to challenge the truthfulness of the accusations, and beyond that to determine whether such accusations had been made knowing that they were false.

Rule 32 requires only that each of the parties be given "an opportunity to *comment* upon the probation officer's determination and on other matters relating to the appropriate sentence." (Emphasis supplied). Whether a defendant is also entitled to a hearing is within the discretion of the sentencing court. *United States v. Peterman,* 841 F.2d 1474, 1484 (10th Cir. 1988), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 783, 102 L.Ed.2d 774 (1989).

#### c.

■ Burger contends that the district court erred in failing to resolve disputed

findings under Fed.R.Crim.P. 32(c)(3)(D) [3] prior to the imposition of his sentence. Burger argues that:

The Tenth Circuit has squarely held that where the defendant challenges any of the facts contained in the presentence report, the proper procedure is for the court to "reduce[ ] its findings regarding the disputed material to written form and attach[ ] them to the presentence report as is required in Rule 32(c)(3)(D)." *United States v. Alvarado,* 909 F.2d [1443 (10th Cir.1990) ] at 1445. Accordingly, the defendant is expressly afforded the opportunity to review such findings prior to imposition of sentence.

(Brief of Appellant at p. 36).

■ We agree with Burger that Rule 32(c)(3)(D) and *United States v. Alvarado, supra,* require the district court to reduce its findings regarding disputed materials to written form and attach them to the presentence report. The district court did so herein. We do not agree with Burger that Rule 32(c)(3)(D) "[a]ccordingly ... expressly afforded the opportunity to review such findings prior to imposition of sentence."

■ Neither Rule 32(c)(3)(D) nor *United States v. Alvarado, supra,* require that a defendant be afforded the opportunity to review the court's findings *prior* to the imposition of sentence. The district court complies with Rule 32(c)(3)(D), when, "as to each matter controverted [it] make[s] (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing" and performs the "ministerial task of appending its determinations regarding disputed matters in the presentence report." *United States v. Jackson,* 950 F.2d at 638. *See also United States v. Price,* 945 F.2d 331, 333 (10th Cir.1991); *United States v. Anthony,* 944 F.2d 780, 783 (10th Cir.1991).

---

**3.** Rule 32(c)(3)(D) provides: If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.

## IV.

Burger contends that his sentence was unlawful and must be vacated.

### a.

■ Burger pled guilty to five separate counts, i.e., conspiracy (Count 1) and four counts of bank fraud (Counts 16, 18, 19, and 20) in violation of 18 U.S.C. § 1344. Burger was informed that he could be imprisoned up to five years on each count and that the sentences could be ordered to run consecutively. Burger was sentenced as follows: Count 1, five years; Count 16, five years, to run consecutively to Count 1; Count 18, two years to run consecutively to Counts 1 and 16; Count 19, five years to run concurrently with Counts 1, 16, and 18; and Count 20, five years, to run concurrently with Counts 1, 16, 18, and 19.

On appeal, Burger argues, as he argued to the district court, that the sentences on the non-conspiracy counts must be vacated because they constituted multiple sentences for the same crime. We disagree. We adopt the district court's findings:

> The court further finds that defendants' arguments that the Indictment violates the double jeopardy clause, and thus, should be dismissed are without merit. The crimes charged in this Indictment involve bank fraud, [and] under the relevant statute, 18 U.S.C. § 1344, an offense occurs upon each execution or attempted execution of a scheme to defraud. *United States v. Poliak*, 823 F.2d 371, 372 (9th Cir.1987), cert. denied, 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988). Thus, each count of the Indictment involving a draw upon a line of credit would constitute a separate execution of the scheme and would be punishable as a separate crime. The court further notes that this argument is untimely because it was first raised in defendants' motions for reconsideration. Fed. R.Crim.P. 12(f).

(Appendix of Appellant, Vol. II at p. A00287, n. 6).

### b.

Burger contends that the court erred in imposing a twelve year alternative sentence under the 1988 guidelines. During Burger's sentencing, the court found "that should the original guidelines be applicable to this case, an upward departure or an aggregate sentence of 144 months is appropriate and justified." (Appendix of Appellant, Vol. II, at p. A00365). Burger argues it was improper to depart at all under the 1988 guidelines.

Inasmuch as the district court properly sentenced Burger under the 1990 guidelines, c., *infra*, we need not examine the propriety of the court's alternative sentence under the 1988 guidelines.

### c.

■ Burger argues that his sentence under the 1990 guidelines violated the *ex post facto* clause.

Burger pled guilty to a conspiracy "[c]ommencing at least as early as 1984, the exact date being unknown to the grand jury, continuing until the return of this indictment [January 10, 1991]." (Appendix of Appellant, Vol. I, at p. A00005). Inasmuch as Burger pled guilty to a conspiracy which extended over seven years and terminated after the implementation of the 1990 amendments, his sentence under the 1990 guidelines was not in violation of the *ex post facto* clause. *See United States v. Morrison*, 938 F.2d 168, 170 (10th Cir.1991) ("the guidelines apply to "straddle" crimes: continuing offenses 'in which acts comprising the crime occur both before and after the effective date of the Guidelines.' *United States v. Bakker*, 925 F.2d 728, 739 (4th Cir.1991))."

### d.

■ Burger contends that he was improperly punished for causing a loss without regard to whether he intended to cause such a loss. He argues that since the four substantive counts to which he pled guilty all occurred prior to the end of 1988, and since all the counts "alleged that [he] had obtained for a borrower of People's a loan of $5 million [that] the most

that the government could have contended in calculating the 'loss' for purposes of guideline § 2F.1," (Brief of Appellant at p. 43), was five million dollars. Factual findings supporting a district court's calculation of loss under § 2F1.1 are reviewed under the clearly erroneous standard. *United States v. Smith*, 951 F.2d 1164, 1165 (10th Cir.1991).

Burger's argument ignores the fact that he also pled guilty to conspiracy; that "the amount of loss need not be precise." U.S.S.G. § 2F1.1, comment. (n. 8); and that the district court found, by adopting the findings of the probation office, that the "[n]et total of damages reflecting actual losses to RTC from Mr. Burger's involvement total $127,665,742." (Appendix of Appellant, Vol. I, at p. A00178). Under these circumstances, we hold that the district court's utilization of "more than $80,-000,000" in calculating the loss under U.S.S.G. § 2F1.1 was not clearly erroneous.

The judgment of conviction is affirmed. The case is remanded, however, for resentencing consistent with this opinion.