996 F.2d 312
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ward Laray PRICE, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Mark ANTHONY, Defendant-Appellant.
 Nos. 92-5033, 92-5041.
 United States Court of Appeals, Tenth Circuit.
 June 4, 1993.
 
 Before McKAY, Chief Judge, ANDERSON, Circuit Judge, and MECHEM,[1] Senior District Judge.
 ORDER AND JUDGMENT[2]
 McKAY, Chief Judge.
 
 
 1
 In No. 92-5033 the parties have agreed that the case be submitted for decision on the briefs. See Fed.R.App.P. 34(f); 10th Cir.R. 34.1.2. The case is therefore ordered submitted without oral argument. No. 92-5041 was orally argued before this panel.
 
 
 2
 A jury convicted Defendants of conspiracy to distribute cocaine base. The district court sentenced Defendant Price to life in prison and Defendant Anthony to thirty years. Defendants appealed, and we remanded for re-sentencing based on a procedural error. United States v. Price, 945 F.2d 331 (10th Cir.1991); United States v. Anthony, 944 F.2d 780 (10th Cir.1991). On resentencing, the district court again imposed the same sentences, and Defendants appeal again.[3] We affirm.
 
 
 3
 * and
 
 
 4
 Mr. Price argues that the trial court clearly erred in determining that he and his co-conspirators sold in excess of 500 grams of crack cocaine during the life of the conspiracy. The district court stated:
 
 
 5
 Well, the transcript certainly justifies the finding that it exceeded the 500 grams. The testimony of [one police officer] revealed that in June of '89 that Mr. Price did advise him that he was selling approximately 28 ounces of crack cocaine through the first two weeks of every month, and it slowed down some the latter two weeks. This was the meeting that took place at the Waffle House, and was testified to by [the officer]....
 
 
 6
 Also at a later meeting between Mr. Price and [the officer] which was July 17 of '89 at the Georgetown Plaza Hotel in Tulsa, Price again stated that during the final two weeks of the month the organization that he headed sold two to three ounces of crack per day.
 
 
 7
 Then there was the testimony of ... the informant who informed [that same officer] that during--that during an interview in May of '89 that he overheard a conversation between Mr. Price and the co-defendant in which he had stated that he had obtained two kilograms of crack on a trip to Oklahoma City at once, and also that in June of '89, that Mr. Price advised him he had arranged to receive three kilograms of crack from a source to be delivered on or about July 1st of '89. Thirty-five ounces is equal to one kilogram, and if you use the 28 ounces for the first two weeks of each month as average distribution, that would total an amount of approximately five point six kilograms over a seven month period, and this doesn't even take into account that which was admittedly distributed in the latter 2 weeks of each of the months. The transcript at trial clearly demonstrates, and the court believes that it is reliable that the amount exceeded 500 grams, and therefore the court so finds that it did in fact so exceed the 500 grams.
 
 
 8
 (Tr. of Price Sentencing Hr'g at 8-9.)
 
 
 9
 We have conducted an independent review of the record, and we find support in the record for all of the trial court's statements. We are unable to state that the trial court clearly erred in finding by a preponderance of the evidence that Mr. Price and his co-conspirators distributed in excess of 500 grams of crack cocaine.
 
 B
 
 10
 Mr. Anthony also challenges the finding that he is accountable for the sale of over 500 grams of crack cocaine. He was only involved in the conspiracy for a little more than a month, primarily in April 1989. Nevertheless, the district court found that the conspiracy involved over 500 grams in that short time.
 
 
 11
 [I]f one looks at the only evidence presented to the Court as certainly the testimony did clearly indicate, clearly, that this was a rather large, continuing, active drug dispensing conspiracy. There's nothing to indicate that during the month of April that it wasn't as active during that month as any other month either before or after. And if one looks only at the month of April ..., that establishes that it would have taken not too much more than six ounces of crack cocaine to be sold in just two weeks to have reached the critical level, I think, of the 500 grams that is necessary to establish the base of 36.
 
 
 12
 In any event, it seems clear that the testimony before the Court and certainly it's obvious the jury believed [the officer who testified], believed Mr. Price in his taped conversations that were played to the jury, the Court has no reason to disbelieve them and therefore believes them also.
 
 
 13
 (Tr. of Anthony Sentencing Hr'g at 8-9.)
 
 
 14
 We find support in the record for all of the trial court's statements. We do not agree with Mr. Anthony's claim that the facts relied on by the trial court lack a minimum indicia of trustworthiness. We therefore are unable to state that the trial court clearly erred in finding by a preponderance of the evidence that Mr. Anthony was involved in a conspiracy that distributed in excess of 500 grams of crack cocaine.
 
 II
 
 15
 Mr. Anthony strenuously urges that the trial court clearly erred in finding that Mr. Anthony could have reasonably foreseen that his co-conspirators would distribute such a large amount of crack cocaine in a little more than a month. Mr. Anthony is correct in pointing out that membership in a conspiracy does not automatically make all the activities of the conspiracy reasonably foreseeable. United States v. Puma, 937 F.2d 151, 160 (5th Cir.1991), cert. denied, 112 S.Ct. 1165 (1992). He also notes that the government did not present detailed evidence as to his role in the conspiracy. Nevertheless, when reviewing for clear error, we are mindful of the admonition that "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." Anderson v. Bessemer City, 470 U.S. 564, 574 (1985).
 
 
 16
 The record contains testimony that at least once Mr. Anthony participated in preparing cocaine for sale at an apartment that his co-conspirators used on a daily basis to further their drug enterprise. It also contains testimony that Mr. Anthony was present in the apartment on other occasions, and that Mr. Price identified Mr. Anthony as one of the only seven people Mr. Price dealt with. In light of this evidence, we are unable to say that the trial court's finding, by a preponderance of the evidence, that Mr. Anthony could have reasonably foreseen the extent of his co-conspirator's operations was an impermissible view of the evidence.
 
 III
 
 17
 Mr. Price argues that the trial court clearly erred in enhancing his sentence based on his leadership role in the conspiracy pursuant to § 3B1.1(a) of the United States Sentencing Guidelines. Under § 3B1.1(a), the trial court must find by a preponderance of the evidence that the defendant was the leader of a criminal enterprise that involved five or more participants. Id.; United States v. Kirk, 894 F.2d 1162, 1164 (10th Cir.1990) (proof must be by a preponderance of the evidence). Further, "[a]lthough ... more than one leader or organizer of a criminal association may exist, we believe that application of § 3B1.1(a) requires some control, directly or indirectly, by the defendant over the five participants if the criminal activity is not 'otherwise extensive.' " United States v. Reid, 911 F.2d 1456, 1465 n. 8 (10th Cir.1990) (citations omitted), cert. denied, 111 S.Ct. 990 (1991).
 
 
 18
 The record shows that Mr. Price named seven individuals as his "main players." (VI Trial Tr. at 298-99.) This evidence precludes a judgment that the district court clearly erred in finding by a preponderance of the evidence that Mr. Price lead a group of five or more people in selling crack cocaine.
 
 
 19
 Mr. Price claims that the trial court erred in not reviewing on the record the factors listed in the commentary to § 3B1.1 for determining a leadership role. Mr. Price cites no case law requiring the trial court to discuss these factors on the record. We decline to create such a requirement.
 
 
 20
 Mr. Price argues that in considering this enhancement, the trial court may look only to the offense of conviction--not to relevant conduct. However, the leadership role Mr. Price played was, in the course of the offense of conviction, a conspiracy to distribute cocaine.
 
 IV
 
 21
 Mr. Price complains that the court took no testimony to supplement the trial record. Yet, the court offered Mr. Price the opportunity to present testimony, and he declined, choosing to stand on the record. This contention is without merit.
 
 V
 
 22
 Finally, Mr. Price points out that the Sentencing Guidelines mandated a sentence of life without possibility of parole despite his lack of a prior felony conviction. He claims that, under the circumstances, his sentence is unconstitutionally severe. However, in Harmelin v. Michigan, 111 S.Ct. 2680 (1991), the Supreme Court ruled that a similar mandatory sentence for simple possession of 650 grams of regular (as opposed to crack) cocaine did not violate the Eighth Amendment.[4] Mr. Price's sentence involved a similar amount of cocaine, but with proof of an intent to distribute absent in Harmelin, see id. at 2717-18 (White, J., dissenting), and in a more concentrated form. Under Harmelin, therefore, this sentence is not unconstitutional. The fact that it was imposed pursuant to the Sentencing Guidelines, as opposed to pursuant to a statute, makes no difference. See United States v. Hughes, 901 F.2d 830, 832 (10th Cir.), cert. denied, 111 S.Ct. 163 (1990).
 
 
 23
 We AFFIRM the judgment of the district court.
 
 
 
 [1]
 The Honorable Edwin L. Mechem, United States Senior District Judge for the District of New Mexico, sitting by designation
 
 
 [2]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [3]
 The prior appeal also dealt with Mr. Price's sentence on a related count. Mr. Price does not appeal from re-sentencing on that count
 
 
 [4]
 Two justices concluded that proportionality challenges such as Mr. Price's are per se invalid, see id. at 2696 (Scalia, J.), while three others found the sentence not unconstitutional given the severity of the crime, id. at 2706 (Kennedy, J., concurring in part and concurring in the judgment)