77 F.3d 493
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Darryl Lamont HAYNES, Defendant-Appellant.
 No. 95-5147.
 United States Court of Appeals, Tenth Circuit.
 Feb. 15, 1996.
 
 Before BALDOCK, HENRY, and LUCERO, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 HENRY
 
 1
 Defendant Darryl Lamont Haynes appeals his convictions and sentences for armed carjacking, using and carrying a firearm during the commission of a violent crime, and conspiring to commit those offenses. Mr. Haynes argues that the district court erred in denying his motion to withdraw his guilty plea and in its application of several provisions of the United States Sentencing Guidelines (USSG). We exercise jurisdiction under 28 U.S.C. 1291 and affirm the decision of the district court.
 
 I. BACKGROUND
 
 2
 In October 1994, a grand jury issued an indictment against Mr. Haynes and several codefendants alleging that they had committed several carjackings and related felonies in Tulsa, Oklahoma in April 1994. On November 30, 1994, Mr. Haynes entered a plea of guilty to counts two, seven, and eight of the indictment. These counts alleged that, on April 11, 1994, Mr. Haynes and a codefendant, Gerald Marshall Payne, committed an armed carjacking (in violation of 18 U.S.C. 2119), used and carried a firearm during and in relation to a violent crime (in violation of 18 U.S.C. 924(c)), and conspired to commit those offenses (in violation of 18 U.S.C. 371).
 
 
 3
 The circumstances surrounding these charges were explained during the change of plea proceedings for Mr. Haynes, in Mr. Haynes's presentence report, at Mr. Haynes's sentencing, and at the trial of Mr. Haynes's codefendants. On the evening of April 11, 1994, Gregory Thomas (a codefendant) drove Mr. Haynes and Mr. Payne to the parking lot of a Tulsa apartment complex. Mr. Haynes and Mr. Payne approached Daniel Keeney, a twenty-three year old student at Tulsa Junior College, who had just parked his car nearby. Mr. Payne ran up to Mr. Keeney, pointed a semiautomatic handgun at him, pushed him back into his car, and told him to shut up. Mr. Keeney testified at trial that Mr. Payne then said that he was going to kill him and hit him on the head several times with the handgun. Aplee's App. doc. 9, at 8. Mr. Keeney attempted to flee through the passenger door, but Mr. Haynes, who had approached the car from that side, held the door shut. Mr. Haynes then got into the back seat of the car and held Mr. Keeney to keep him from escaping.
 
 
 4
 Mr. Payne handed the gun to Mr. Haynes, started the car, and followed Mr. Thomas's car out of the parking lot. At the same time, Mr. Keeney managed to open one of the back doors and jump out of the car while it was moving. He ran back to the apartment complex for help and found a resident who called the Tulsa Police Department.
 
 
 5
 Mr. Keeney gave the police a description of his car, Mr. Thomas's car, and the individuals who assaulted him. Several minutes later, a Tulsa police officer stopped a car matching the description that Mr. Keeney had provided. The officer transported the three men in the car back to the apartment complex, where Mr. Keeney confirmed that they were the ones who had assaulted him. During a search of Mr. Thomas's car, officers discovered a handgun in the back seat. Mr. Haynes, Mr. Payne and Mr. Thomas were then arrested. They were charged with various state offenses, as well as the federal offenses set forth in the grand jury indictment in this case.
 
 
 6
 In his Petition to Enter a Guilty Plea, filed November 30, 1994, Mr. Haynes described his involvement in the charged offenses as follows:
 
 
 7
 I represent to the Court I did the following acts in connection with the charge(s) made against me:
 
 
 8
 On April 11, 1994, Gerald Payne and I agreed we would take a motor vehicle by force from another person. We agreed to carry a firearm during the offense. On that same date, in Tulsa, Oklahoma, I used a firearm to force David Keeney back into his 1988 Mercury Topaz automobile. Gerald Payne and I then drove Keeney's car a short distance before abandoning the automobile.
 
 
 9
 Aplee's App. doc. 2., at 2.
 
 
 10
 In pleading guilty to counts two, seven, and eight in open court, Mr. Haynes gave a similar account:
 
 
 11
 THE COURT: ... I want you to tell me in your own words what you did.
 
 
 12
 THE DEFENDANT: On April 11th, 1994, me and Gerald Payne forced Mr. Keeney into his car and started his car and drove a little ways and then we got out of the car and left and we had guns on him and Gerald threatened him.
 
 
 13
 THE COURT: Who had the gun?
 
 
 14
 THE DEFENDANT: Gerald had it at first and then I had it, sir.
 
 
 15
 THE COURT: What did you do with the gun?
 
 
 16
 THE DEFENDANT: I held it to Mr. Keeney.
 
 
 17
 THE COURT: What part of his body did you hold it to?
 
 
 18
 THE DEFENDANT: I just had it in the back seat in my hand.
 
 
 19
 THE COURT: Did you threaten him in any way or tell him what would happen?
 
 THE DEFENDANT: No, sir
 
 20
 THE COURT: What was the gun for?
 
 
 21
 THE DEFENDANT: Just to make sure he didn't do anything to try to run.
 
 
 22
 Aplee's App. doc. 4, at 17-18.
 
 
 23
 Subsequently, in January 1995, Mr. Haynes moved to withdraw his guilty plea. He informed the district court that he "was just going along with the plea just to get everything over with and after I sat and thought about it ... most of the charges that were on me ... I wasn't even guilty to. I just took them just so that I could get less time." Aplee's App. doc. 5, at 4-5. In explaining his prior statements, Mr. Haynes said that "[s]ome things I wasn't telling the truth about." Id. at 8. He said that he never had possession of the handgun and that he had not agreed with Mr. Payne to commit a carjacking. Id. at 16.
 
 
 24
 The district court denied Mr. Haynes's motion to withdraw his guilty plea. The court explained its ruling as based on Mr. Haynes's previous statements, his demeanor at the guilty plea proceedings, and his demeanor at the proceedings in which he sought to withdraw the plea. Id. at 29.
 
 
 25
 During the sentencing proceedings, Mr. Haynes objected to certain sections of the presentence report. The district court overruled those objections and adopted the report's findings and recommendations. The court sentenced Mr. Haynes to 60 months imprisonment on the conspiracy count, 136 months on the carjacking count, and 60 months on the handgun count. Although the court made the first two sentences concurrent with one another, it made the sixty month sentence on the handgun count consecutive to the other sentences. Following the recommendations of the presentence report, the court assessed a two point increase in the offense level under USSG 2B3.1. (b)(3)(A) because the victim suffered bodily injury. The court also increased the offense level by an additional four points pursuant to USSG 2B3.1. (b)(4)(A) because the victim was abducted. Finally, the court refused to decrease the offense level for acceptance of responsibility under USSG 3E1.1(a).
 
 II. DISCUSSION
 A. Withdrawal of The/A Guilty Plea
 
 26
 On appeal, Mr. Haynes first argues that the district court erred in refusing to allow him to withdraw his guilty plea. Under Rule 32(e) of the Federal Rules of Criminal Procedure, if a motion to withdraw a guilty plea is made before a sentence is imposed, the court "may permit the plea to be withdrawn if the defendant shows any fair and just reason." Fed.R.Crim.P. 32(e). The burden of establishing a "fair and just reason" is on the defendant. United States v. Burger, 964 F.2d 1065, 1070-71 (10th Cir.1992). Motions to withdraw guilty pleas should be "freely allowed and treated with liberality." United States v. Wade, 940 F.2d 1375, 1377 (10th Cir.1991). However, the decision is committed to the sound discretion of the trial court. United States v. Rhodes, 913 F.2d 839, 845 (10th Cir.1990), cert. denied, 498 U.S. 1122 (1991). We therefore review the district court's denial of Mr. Haynes's motion for an abuse of discretion. See id.; United States v. Hickok, 907 F.2d 983, 984 (10th Cir.1990).
 
 
 27
 In Hickok, we noted seven factors relevant to the Rule 32(e) determination: (1) whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice if the motion were granted; (3) whether the defendant has delayed in filing the motion; (4) whether withdrawal of the plea would substantially inconvenience the court; (5) whether the defendant was assisted by counsel; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources. Id. at 985 n. 2 (citing United States v. Carr, 740 F.2d 339, 343-44 (5th Cir.1984), cert. denied, 471 U.S. 1004 (1985)); see also Rhodes, 913 F.2d at 845.
 
 
 28
 Here, Mr. Haynes argues that several of these factors indicate that he should have been allowed to withdraw his guilty plea. He maintains that, without his guilty plea, "[t]he charge of possession of a firearm during the commission of a violent crime remains unsubstantiated." Aplt's Br. at 7. He also notes that he moved to withdraw his plea well before sentencing.
 
 
 29
 In light of the factors set forth in Hickok, we conclude that the district court did not abuse its discretion in denying Mr. Haynes's motion. First, as to Mr. Haynes's assertion of innocence to the firearms charge, we note that, even without his guilty plea, there is ample evidence substantiating his guilt. In particular, Mr. Keeney testified that, after Mr. Payne started the car and began to drive away, "the gentleman in the rear seat had the pistol." Aplee's App. doc. 9, at 11. In addition, Mr. Haynes himself acknowledged at sentencing that after Mr. Payne pushed Mr. Keeney into the car, Mr. Payne handed him the gun. Aple.App. doc. 6, at 15. Moreover, it was entirely proper for the district court to find the version of events that Mr. Haynes first recounted when he entered his guilty plea to be the most credible account of the carjacking and to conclude, based on that account, that Mr. Haynes held the gun in order to prevent Mr. Keeney from escaping.
 
 
 30
 As to the other relevant factors, we note that Mr. Haynes was assisted by counsel throughout the proceedings, that the district court carefully explained to him the implications of his entering a guilty plea--including the maximum sentences that he could receive--and that there is no indication that Mr. Haynes's guilty plea was not knowing and voluntary. Cf. Wade, 940 F.2d at 1378 (affirming the district court's denial of the motion to withdraw because the plea was knowing and voluntary). Additionally, even though Mr. Haynes did move to withdraw his guilty plea before sentencing, he waited until shortly before the trial of his codefendants. Until Mr. Haynes filed his motion to withdraw his plea, the government had considered calling him as a witness in its case against the other defendants. See Aplee's App. doc. 5, at 28. These factors also support the denial of Mr. Haynes's motion. See Wade 940 F.2d at 1379; Rhodes, 913 F.2d at 845.
 
 
 31
 In summary, Mr. Haynes has established no more than that he had a change of heart regarding his guilty plea. That is not sufficient to warrant withdrawal under Rule 32(e). See Hickok, 907 F.2d at 986. We therefore conclude that the district court did not abuse its discretion in denying Mr. Haynes's motion.
 
 
 32
 B. Enhancement for Bodily Injury to the Victim
 
 
 33
 Mr. Haynes challenges the district court's two point increase in the offense level under USSG 2B3.1. (b)(3)(A) for the infliction of bodily injury. Mr. Haynes notes that it was Mr. Payne who hit Mr. Keeney over the head and maintains that "no one in Haynes' shoes could have foreseen that Payne would strike Keeney on the head." Aplt's Br. at 11-12.
 
 
 34
 Under the Guidelines, the conduct of others may be taken into account in calculating a defendant's offense level. See USSG 1B1.3. (a); United States v. Johnson, 971 F.2d 562, 575 (10th Cir.1992). Section 1B1.3. (a)(1)(B) provides that a defendant's base offense level includes
 
 
 35
 in the case of a jointly undertaken criminal activity ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.
 
 
 36
 USSG 1B1.3. (a)(1)(B). "Thus, the fact that the conduct of an individual other than appellant was used in part to increase appellant's sentence is not inconsistent with the guidelines." Johnson, 971 F.2d at 575.
 
 
 37
 Under USSG 1B1.3. (a)(1)(B)., a defendant is accountable for the conduct of others that was "(i) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity." USSG 1B1.3. commentary. The commentary to USSG 1B1.3 gives an example remarkably similar to the facts of the instant case:
 
 
 38
 [T]wo defendants agree to commit a robbery and, during the course of that robbery, the first defendant assaults and injures a victim. The second defendant is accountable for the assault and injury to the victim (even if the second defendant had not agreed to the assault and had cautioned the first defendant to be careful not to hurt anyone) because the assaultive conduct was in furtherance of the jointly undertaken criminal activity (the robbery) and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense). -
 
 
 39
 Id.
 
 
 40
 We review the district court's factual determination as to whether the conduct of another was "in furtherance of the jointly undertaken activity" and "reasonably foreseeable," see id., for clear error. See United States v. McFarlane, 933 F.2d 898, 899 (10th Cir.1991). Here, the record supports the conclusion that Mr. Haynes and Mr. Payne jointly engaged in an armed carjacking and that the assault on Mr. Keeney was reasonably foreseeable in connection with that carjacking. Cf. United States v. Fitzwater, 896 F.2d 1009, 1012 (6th Cir.1990) ("Because it is reasonably foreseeable that participation in concerted criminal conduct to rob a bank might result in the infliction of such an injury to a bank teller, [the defendant's] sentence was properly enhanced even though he was not inside the bank."). Accordingly, the district court's factual findings in applying USSG 1B1.3. (a)(1)(B) were not clearly erroneous and the two point increase of Mr. Haynes's offense level for inflicting bodily injury was proper.
 
 C. Abduction
 
 41
 Mr. Haynes argues that the district court should not have assessed a four point increase in the offense level under USSG 2B3.1. (b)(4)(A) for abducting a victim. He claims that "[h]e had no intention ... of stealing Mr. Keeney's vehicle when he left Thomas' car, and the abduction of Mr. Keeney was never a matter discussed by any of the defendants." Aplt's Br. at 13. He maintains that he should be held accountable for physically restraining Mr. Keeney but not for abducting him.
 
 
 42
 USSG 2B3.1. (b)(4)(A) provides for a four-point increase in the offense level "[i]f any person was abducted to facilitate commission of the offense." USSG 2B3.1. (b)(4)(A). Under the Guidelines, "Abducted' means that a victim was forced to accompany an offender to a different location. For example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction." USSG 1B1.1 commentary.
 
 
 43
 The district court's conclusion that Mr. Haynes participated in the abduction of Mr. Keeney is a factual finding that we review for clear error. See United States v. Garcia, 987 F.2d 1459, 1460 (10th Cir.1993). As we have noted, there is ample evidence in the record to support the conclusion that Mr. Haynes participated in Mr. Keeney's abduction. The evidence of showing that Mr. Haynes' prevented Mr. Keeney's exit and held Mr. Keeney in the vehicle clearly shows this participation. Accordingly, the four level enhancement under USSG 2B3.1. (b)(4)(A) was proper.
 
 D. Acceptance of Responsibility
 
 44
 Finally, Mr. Haynes argues that the district court erred in refusing his request for a reduction in the offense level under USSG 3E1.1 for his acceptance of responsibility. Mr. Haynes maintains that, in spite of his attempt to withdraw his guilty plea, his admission that he participated in the crimes and his continuing willingness to assist the government in its investigation indicate that he accepted responsibility and entitled him to the corresponding offense level reduction.
 
 
 45
 USSG 3E1.1 provides for a two level decrease of the offense level if a defendant "clearly demonstrates acceptance of responsibility for his offense." USSG 3E1.1. (a). A decrease of one additional level may be warranted if the defendant assists authorities in the investigation and prosecution of his own misconduct. See USSG 3E1.1. (b). The accompanying commentary notes that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility" and that "the determination of the sentencing judge is entitled to great deference on review." USSG 3E1.1 commentary. We therefore review the district court's findings for clear error. United States v. Lloyd, 13 F.3d 1450, 1453 (10th Cir.1994).
 
 
 46
 We find no such error here. As noted above Mr. Haynes has continued, unconvincingly, to attempt to minimize his role in the assault and abduction of Mr. Keeney. The district court's refusal to reduce the offense level for an acceptance of responsibility under USSG 3E1.1 was proper.
 
 III. CONCLUSION
 
 47
 Accordingly, for the reasons set forth above, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3