550 So.2d 211 (1989)
Aaron PIERCE
v.
CHARITY HOSPITAL OF LOUISIANA AT NEW ORLEANS, et al.
No. 88-CA-1662.
Court of Appeal of Louisiana, Fourth Circuit.
September 14, 1989.
Writ Denied November 17, 1989.
*212 Bruce C. Waltzer, Paul S. Weidenfeld, New Orleans, Samuel S. Dalton, Jefferson, for plaintiff-appellee.
Robert S. Leake, Asst. Atty. Gen., Dept. of Justice, Div. of Risk Litigation, Baton Rouge, for defendant-appellant.
Wood Brown III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for Judge Steven R. Plotkin.
Before BARRY and BYRNES, JJ.

ON MOTION TO RECUSE
BARRY, Judge.
The motion to recuse Judge Steven R. Plotkin from this appeal came for hearing on July 27, 1989 before the Honorable Denis A. Barry and Honorable William H. Byrnes III.
Present: Samuel S. Dalton
Bruce C. Waltzer
Paul S. Weidenfeld
Movers and attorneys for plaintiff/appellee
Wood Brown, III
Attorney for Judge Plotkin
Gerald J. Daigle, Jr.
Attorney for Faucheux-Farwell Associates, Inc.
Robert S. Leake
Assistant Attorney General for Louisiana, defendant/appellant
The motion to recuse alleges "bias and interest, or the appearance of bias and interest" on the part of Judge Plotkin toward Mr. Bruce C. Waltzer, attorney for Aaron Pierce, the plaintiff/appellee.

BACKGROUND
Mr. James P. Farwell testified that after the first of January, 1989 his firm, Faucheux-Farwell Associates, Inc., began negotiations with Judge Miriam Waltzer and Mr. Bruce Waltzer for his firm's services during Judge Waltzer's candidacy for a position on the Louisiana Supreme Court. Mr. Farwell and Judge Plotkin had lunch on March 16, 1989 and Mr. Farwell mentioned that his firm probably would handle Judge Waltzer's campaign. Judge Plotkin indicated that he had an interest in that position and preferred to have Faucheux-Farwell represent him. Later, Messrs. Farwell and Ronald A. Faucheux decided their firm would not represent Judge Plotkin or Judge Waltzer if both were candidates for the Supreme Court.
At lunch on April 18, 1989 Messrs. Farwell and Faucheux informed Judge Plotkin of their decision to remain neutral if he qualified for the same seat as Judge Waltzer. On April 19, 1989 Judge Waltzer, Mr. Bruce Waltzer, and Mr. Farwell signed an agreement for the firm to represent Judge Waltzer in an election to the Supreme Court, Court of Appeal or re-election to Criminal District Court. A $10,000 retainer was paid. That day the parties agreed to an addendum (a letter agreement) dated April 21, 1989 which provides that Faucheux-Farwell Associates, Inc. would withdraw as consultants if Judge Plotkin and Judge Waltzer qualified for the Supreme Court.
The deposition of Mr. Faucheux was stipulated and corroborates Mr. Farwell's testimony.
Mr. Harwell M. Doty was admitted as an expert on Louisiana election campaigns and testified that the inability to secure Faucheux-Farwell's services would be detrimental to Judge Waltzer's campaign.

STATUTORY GROUND AND INTERPRETATION
The motion to recuse Judge Plotkin is predicated on La.C.C.P. art. 151 B(5) which provides:
B. A judge of any court, trial or appellate, may be recused when he
* * * * * *
5. Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings.
The issue is whether Judge Plotkin is biased or prejudiced against Mr. Waltzer, plaintiff's attorney, "to such an extent that *213 he would be unable to conduct fair and impartial proceedings."
Matters relating to judicial disqualification due to kinship, personal bias, and remoteness of interest are generally matters of legislative discretion. Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). The traditional common law rule was that a judge could not be disqualified for bias or prejudice. The recent trend has been to adopt statutes permitting disqualification on those grounds. Aetna Life Insurance Company v. Lavoie, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986).
Although La.C.Cr.P. art. 671 has included bias and prejudice as a ground for recusation in criminal cases from the Louisiana Code of Criminal Procedure enacted in 1966,[1] La.C.C.P. art. 151 did not include those grounds until a 1987 amendment.[2] Prior to that time impartiality, bias, and prejudice were not statutory grounds for recusation in a civil matter.[3]Love v. Baden, 478 So.2d 1008 (La.App. 3rd Cir.1985); Rollo v. Dison, 402 So.2d 122 (La.App. 2 Cir.1981), writ denied 404 So.2d 265 (La. 1981).
Both C.Cr.P. art. 671 and C.C.P. art. 151, as amended by 1988 La.Acts. No. 515 enacting the new Louisiana Code of Evidence, presently list as a recusal ground bias or prejudice to such an extent that the judge would be unable to conduct fair and impartial proceedings. Therefore, the jurisprudence interpreting the recusal ground of bias or prejudice in La.C.Cr.P. art. 671 as well as in C.C.P. art. 151 is relevant.
We start from the premise that a judge is presumed to be impartial. State v. Edwards, 420 So.2d 663 (La.1982).
[T]he law will not suppose a possibility of bias or favour in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea.
Aetna Life Insurance Company, 106 S.Ct. at 1585, quoting 3 W. Blackstone, Commentaries * 361.
The moving party cannot merely allege lack of impartiality; he must present some factual basis. State v. McCarty, 499 So.2d 292 (La.App. 1st Cir.1986), writ denied 505 So.2d 56 (La.1987). Courts have consistently held that the bias, prejudice or personal interest must be of a substantial nature and based on more than conclusionary allegations. State v. Gordy, 380 So.2d 1347 (La.1980); State v. Maduell, 326 So.2d 820 (La.1976); State v. Williams, 517 So.2d 1268 (La.App. 4th Cir.1987), writ denied 520 So.2d 748 (La.1988); State v. Murphy, 463 So.2d 812 (La.App. 2d Cir.1985), writ denied 468 So.2d 570 (La.1985); State v. Godfrey, 476 So.2d 1174 (La.App. 3rd Cir. 1985).

TESTIMONY
The Court questioned Mr. Farwell and Mr. Faucheux:

EXAMINATION [OF MR. FARWELL] BY JUDGE BARRY:
Q. Mr. Farwell, relative to the March 16 luncheon with Judge Plotkin at Isadora's, did he at any time exhibit any animosity toward Bruce Waltzer?
A. No. In fact, he has always spoken very highly of both the Waltzers. I might say that the Waltzers, notwithstanding the fact that there is obvious competition between Miriam and Bruce [sic] for the Supreme Court, have gone out of their way to be mutually complimentary to each other in my presence.
Q. At that April 18 luncheon at the Sazerac, was Mr. Faucheux with you?
A. Yes.
Q. Did he [Judge Plotkin] exhibit any animosity or bias in any way with Bruce Waltzer?
*214 A. He exhibited absolutely no animosity at all. When you state did he exhibit any bias, with all due respect, I don't know what you mean by that.
Q. Well, it might be a legal term. The allegation before us today is that Judge Plotkin exhibited bias and interest toward Bruce Waltzer, and I'm trying to clarify that. Bias would be difference of opinion, perhaps, or it could be exemplified by animosity.
A. I'm trying to answer your question.
Q. We have to answer that question also.
A. Intelligibly, as a lawyer, I understand the question you are asking. All I can say to you is that in all the conversations, even throughout this period of this motion, I must say that the Waltzers and Steve Plotkin have gone out of their way to be complimentary to each other. That may seem surprising in view of the competition, but that is in fact the case.
Q. Did Judge Plotkin at any time claim a privilege for your services?
A. No.
Q. You understand what I mean by that?
A. Yes, I do.
Q. He did not do that?
A. No.

* * * * * *

EXAMINATION [OF MR. FAUCHEUX] BY JUDGE BARRY:
Q. Mr. Faucheux, were you present at the lunch at Isadora's Restaurant on March 16 with Mr. Farwell and Judge Plotkin?
A. No.
Q. Were you present at the Sazerac luncheon on April 18 with Judge Plotkin and Mr. Farwell?
A. Well, for about two-thirds or three-quarters of it.
Q. Did Judge Plotkin, at that time or any time since the matter arose pertaining to the Supreme Court election, exhibit any animosity or bias toward Bruce Waltzer?
A. No.
Q. Did Judge Plotkin at any time since this matter arose pertaining to the Supreme Court election claim a privilege on the services of Farwell and Faucheux
A. No.
Q. in that you could not represent anyone else other than him?
A. No.

ANALYSIS
Mr. Farwell and Mr. Faucheux clearly responded that Judge Plotkin did not exhibit animosity or bias toward Bruce Waltzer, nor did he claim a privilege as to their firm's services. No facts were adduced to show partiality or bias by Judge Plotkin.
A judge's potential interest in a judicial election which might place him in competition with another judge (or attorney) or an attorney's family member cannot be construed to cause bias or prejudice against that other judge or attorney. A judge is often in the position of handling matters which involve an attorney who has campaigned or contributed to the judge's opponent. The Mover, Mr. Waltzer, is the husband of a potential candidate against Judge Plotkin. Mr. Waltzer did not establish any bias or prejudice by Judge Plotkin.
Whether or not the April 21, 1989 letter addendum to the contract is detrimental to Judge Waltzer is immaterial under La.C. C.P. art. 151. Whether Judge Waltzer will have the services of Faucheux-Farwell has no bearing on the recusal issue.
Mr. Waltzer also questions "the appearance of impropriety" if Judge Plotkin is not recused. See State v. LeBlanc, 367 So.2d 335 (La.1979); State v. Lemelle, 353 So.2d 1312 (La.1977). Canon 2 of the Code of Judicial Conduct (adopted by the Louisiana Supreme Court in 1975 effective January 1, 1976) declares that a judge should avoid the appearance of impropriety. The American Bar Association Code of Judicial Conduct Canon 3(C)(1) recommends disqualification *215 if a judge's impartiality might reasonably be questioned. La. Const. Art. I § 22 provides that all courts shall be open and every person shall have an adequate remedy by due process of law and justice administered without partiality.
La.C.C.P. art. 151 has not been amended to include "the appearance of impropriety" as a ground to recuse. It is settled in Louisiana jurisprudence that the list of grounds for recusation of a judge is exclusive, not illustrative, and there must be a statutory ground for recusing a judge. Spangenberg v. Yale Materials Handling-Louisiana, 407 So.2d 1270 (La.App. 4th Cir.1981), writ denied 412 So.2d 1096 (La. 1982); State v. Pailet, 246 La. 483, 165 So.2d 294 (1964).
Courts have felt constrained to follow the rigid rule that all grounds for recusation are specified in the statute which must be strictly construed to hold that a mere appearance of impropriety, not statutorily listed in La.C.C.P. art. 151, cannot be a basis for recusal. Christian v. Christian, 535 So.2d 842 (La.App. 2d Cir.1988); Southern Builders, Inc. v. Carla Charcoal, Inc., 357 So.2d 638 (La.App. 3rd Cir. 1978), writ denied 358 So.2d 632 (La.1978). But see State v. LeBlanc, 367 So.2d at 341; State v. Lemelle, 353 So.2d at 1314, interpreting La.C.Cr.P. art. 671.
Mr. Waltzer's contention that there is an appearance of impropriety requires more than his conclusionary allegation. Mr. Waltzer has to present facts from which an observer could reasonably perceive that Judge Plotkin would not/could not handle this case impartially.
The facts developed at the hearing coupled with deposition testimony do not support any appearance of impropriety. There is nothing to show animosity or bias by Judge Plotkin toward Mr. Waltzer, or for that matter, toward Judge Waltzer. In fact, there was specific testimony to the contrary by Mr. Farwell who stated that Judge Plotkin "exhibited absolutely no animosity at all." Mr. Farwell further declared that throughout their conversations, negotiations, and discussions "the Waltzers and Steve Plotkin have gone out of their way to be complimentary to each other." Mr. Farwell commented that such conduct "may seem surprising in view of the competition but that is in fact the case." Mr. Faucheux also answered in the negative when asked whether Judge Plotkin had exhibited any bias or animosity toward Mr. Waltzer.
Competition inherent in our adversarial political system, including judicial contests, does not translate into personal bias, animosity, or prejudice between the candidates, or toward the spouse of a potential candidate.
There is no evidence, or even an indication that Judge Plotkin has bias or animosity, nor will his participation in this litigation create any appearance of impropriety.
The motion to recuse is denied.
MOTION DENIED.
NOTES
[1] 1966 La. Acts, No. 310.
[2] 1987 La. Acts, No. 579 § 1.
[3] Prior to that time, La.C.C.P. art. 151 provided that a judge would be recused if he "[i]s interested in the cause."