Linda WILLIAMS and John W. Williams, Individually and as Representatives of the Estate of John Wesley Williams, Jr., Deceased, Appellants,

v.

Baluswamy VISWANATHAN, M.D., Appellee.

No. 07–00–0414–CV.

Court of Appeals of Texas, Amarillo.

Jan. 8, 2001.

Deborah Smith McClure, Amarillo, for appellant.

Benjamin H. Davidson, McCleskey, Harriger, Brazill & Graf, Lubbock, for appellee.

Before BOYD, C.J., and REAVIS, J.

*ON APPELLANTS' DISQUALIFICATION AND RECUSAL MOTION*

BOYD, Chief Justice.

Appellants have filed a motion seeking to disqualify Justice Phil Johnson and to recuse Justice Brian Quinn. Texas Rule of Civil Procedure 18b lists the reasons why a judge, which we assume would include an appellate justice, should disqualify himself or herself from participation in a pending matter, as well as the reasons why such a judge or justice should recuse himself or herself in a pending matter.

Texas Rule of Appellate Procedure 16 deals particularly with appellate judges and includes the procedure by which motions such as this may be determined.

## Justice Phil Johnson

Justice Johnson agrees that he is disqualified to participate in the determination of this cause because of his prior involvement as an attorney in this case at the trial court level. Accordingly, no further discussion of appellants' motion in that regard is necessary.

## Justice Brian Quinn

Section 16.3 is the portion of Tex.R.App. P. 16 that prescribes the procedure for presenting motions seeking to recuse a sitting justice. Subsection (b) of that section provides that subsequent to the filing of a recusal motion, and before proceeding any further in the case, the challenged justice or judge must "either remove himself or herself from all participation in the case or certify the matter to the entire court, which will decide the motion by a majority of the remaining judges sitting *en banc.*" Tex.R.App. P. 16.3(b). Thus, a motion to recuse simply initiates a more formal process of consideration. Justice Quinn has certified the reasons why he does not believe he should recuse himself to the two members of the court who are not the subjects of the recusal motion and has stated in some detail his reasons for doing so. It now becomes our duty to decide the motion.

■ Appellants initially seek Justice Quinn's recusal pursuant to the Tex.R. Civ. P. 18b(2) mandate that a judge shall recuse himself in any proceeding in which his impartiality might reasonably be questioned. The gist of appellants' initial challenge to Justice Quinn is that appellants' attorney unsuccessfully challenged him in the 2000 Republican primary and that ap-

pellants "not only did not contribute to Justice Quinn's campaign, but also vigorously campaigned for his opponent who was at the time and remains now, the undersigned counsel." They also point out that "[s]everal hundred dollars of the monies collected and expended on Justice Quinn's behalf came from the law firm representing Dr. Viswanathan." Thus, they conclude, "[a] reasonable member of the public at large, knowing all the facts in the public domain would doubt that Justice Quinn could be impartial in these proceedings."

■ In considering this initial argument, we first note that appellants do not present any grounds for constitutional or rule-based disqualification in regard to Justice Quinn. *See* Tex. Const. art. V, § 11; Tex.R.App. P. 16.1. We also note that it is the duty of a judge or justice to sit and decide matters brought before the court upon which the judge or justice serves. *Sun Oil Co. v. Whitaker*, 483 S.W.2d 808, 823–24 (Tex.1972); Tex.Code Jud. Conduct, Canon 3(B)(1), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. B (Vernon Supp.2000). It has been well said that "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *U.S. v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992), *cert. denied,* 507 U.S. 1033, 113 S.Ct. 1854, 123 L.Ed.2d 477 (1993) (quoting *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir.1987)).

Texas Rule of Civil Procedure 18b(2)(a) provides that a judge shall recuse himself or herself in any proceeding in which "his impartiality might reasonably be questioned." The provision furnishes the basis upon which movants seek to recuse Justice Quinn. The challenge presented by movants is a direct result of the system for selection of judges which has long been

utilized in this state, namely a "no holds barred" partisan election. There are relatively few active judges in this state who have not at one time or another gone through a contested election. This is particularly true of our two highest courts. If a *per se* rule existed that a sitting judge should recuse merely because a lawyer who unsuccessfully ran against that judge or a supporter of that challenger represents a litigant before that sitting judge, the efficiency of our judicial system would be seriously compromised. We do not believe that, without more, a mere allegation that a litigant's lawyer entered the elective process and that the litigant supported his lawyer's efforts is sufficient to show that a reasonable person might doubt a sitting justice's ability to be impartial.

It is virtually impossible to articulate a bright line test that would govern instances such as this. Of necessity, the determination whether recusal is necessary must be made on a case-by-case fact-intensive basis. There is a paucity of relevant Texas authority to aid us in our decision. However, four justices of the federal supreme court, in interpreting a statutory requirement similar to that contained in our rule, opined that a reasonable question as to a justice's impartiality "is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings." *Liteky v. U.S.*, 510 U.S. 540, 556, 114 S.Ct. 1147, 1158, 127 L.Ed.2d 474 (1994) (Kennedy, J., concurring, joined by Blackmun, Stevens, and Souter, JJ.).

■ As we have noted, even though there is very little helpful Texas authority, we have found the approach of former El Paso Court of Appeals Chief Justice Max Osborn in his concurring opinion in *Agui-*

*lar v. Anderson*, 855 S.W.2d 799 (Tex. App.—El Paso 1993, writ denied) most helpful. In that case, with reference to the Tex.R. Civ. P. 18b(2)(a) impartiality provision, Justice Osborn opined, "[a]fter all [,] the impartial standard has been adopted in order that the public, *i.e.*, the person on the street, might have confidence in the judiciary and to protect judges from unjustified complaints about their being partial in their decision." *Id.* at 804–05. We agree with that reasoning. *See Lueg v. Lueg*, 976 S.W.2d 308, 310 (Tex.App.—Corpus Christi 1998, pet. denied).

We also agree with Chief Justice Osborn that a reasonable person must be aware of the facts surrounding our judiciary and must know that our judges have to stand for election on a regular basis, that elections cost money, and that money must be raised to conduct an effective campaign. *Aguilar*, 855 S.W.2d at 805. Suffice it to say, within the framework of the system mandated by the people of Texas over a long period of time, in order to require a sitting justice to recuse, something more than the mere fact that he or she prevailed in a contested election and that contributions were received must be shown.

It is significant that there are no allegations or showing of any personal animosity between Justice Quinn and his opponent. This, we believe, is a most important element in showing a rational basis for recusal. Our state's long judicial history teaches that the competition inherent in an adversarial judicial system does not always translate into bias or prejudice against a candidate. *See Pierce v. Charity Hospital of Louisiana at New Orleans.*, 550 So.2d 211, 215 (Ct.App.1989, writ denied); *Reach v. Reach*, 378 So.2d 1115, 1117 (Ala.Ct.App. 1979), *cert. denied*, 378 So.2d 1118 (Ala. 1980). It also follows that the mere fact that a litigant supported his attorney in a

race against a sitting justice, again without more, is not sufficient to require recusal. Indeed, if such a path were begun, very seldom would the justices and judges of our two courts of last resort be able to perform their mandated duties. *See Rocha v. Ahmad,* 662 S.W.2d 77, 78 (Tex. App.—San Antonio 1983, no writ).

■ With regard to the allegation that bias is shown because appellants' opposing counsel made contributions to Justice Quinn's campaign, we agree that argument has been rejected by the courts of this state. *See J–IV Inv. v. David Lynn Mach., Inc.,* 784 S.W.2d 106, 107–08 (Tex. App.—Dallas 1990, no writ); *Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 842–45 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dismissed,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

■ Appellants also argue that Justice Quinn should recuse himself because he has a "personal bias or prejudice concerning the subject matter of these proceedings." As best we can tell, appellants are referring to Justice Quinn sitting as one of the three justices who decided *Williams v. Chatman,* 17 S.W.3d 694 (Tex.App.—Amarillo 1999, pet. denied). Appellants contend that Justice Quinn was disqualified under Rule 18b(1)(a) because he had "practiced law" with one of the counsel representing the Lubbock Independent School District in that case. In relevant part, that rule provides that judges should disqualify themselves in all proceedings in which ". . . a lawyer with whom they previously practiced law served *during such association* as a lawyer concerning such matter" (emphasis added.)

By its clear language, the rule refers to an association with another lawyer during the period of time a "matter" was being handled by the attorney in question. Justice Quinn was sworn in as a member of this court on or about January 3, 1995.

Perusal of the *Williams* opinion reveals that the occurrence involved there occurred on May 22, 1995. *Williams,* 17 S.W.3d at 696. This was some four and one-half months after Justice Quinn became a member of this court and the case was heard some four years after the incident. Parenthetically, the opinion in question was written by another member of the court. None of the alleged facts show any disqualification of Justice Quinn from sitting on the case.

■ Appellants also argue that there is "a pending lawsuit against Texas Tech University" and that because Justice Quinn "offices at the University and serves as an Adjunct Professor, he has a financial interest in that suit." Initially, we note that Texas Tech is not a party to the suit underlying this motion and the issue really is not relevant here. However, because the question could arise later, we will address this contention.

■ This court has stated, and previously adhered to, the rule that the type of interest required for disqualification must be of a pecuniary nature so that the judge would gain or lose by the judgment rendered in the case. *Maxey v. Citizens Nat. Bank of Lubbock,* 489 S.W.2d 697, 702 (Tex.Civ.App.—Amarillo 1972), *rev'd on other grounds,* 507 S.W.2d 722 (Tex.1974); *accord King v. Sapp,* 66 Tex. 519, 520, 2 S.W. 573–74 (1886). The pecuniary interest must be capable of valuation. It must also be direct, real, and certain and be in the subject matter and in the result of the case in question. *Maxey,* 489 S.W.2d at 702.

Nothing that appellants have alleged shows that Justice Quinn has any sufficient pecuniary interest to disqualify him in a pending suit against Texas Tech. The mere fact that he offices at the university and serves as an adjunct professor is not suffi-

cient to show the requisite pecuniary interest in the outcome of the suit.

In sum, we find no mandatory basis requiring Justice Quinn's recusal and overrule appellants' motion for disqualification and recusal as it applies to Justice Quinn.

## CERTIFICATION PURSUANT TO TEXAS RULE OF APPELLATE PROCEDURE 16.3(B)

QUINN, Justice.

For the following reasons, I decline to voluntarily recuse myself pursuant to the motion of Linda and John Williams (the Williamses) filed in the above referenced cause. In so declining, I further certify the matter to the entire court pursuant to Texas Rule of Appellate Procedure 16.3(b).

First, it is beyond gainsay that jurists have a duty to entertain and resolve pending causes unless disqualified or legitimately recused. *Love v. Wilcox*, 119 Tex. 256, 264, 28 S.W.2d 515, 518 (1930). Thus, one assessing the ability of a jurist to perform his duties *viz-a-viz* a particular matter must begin with the premise that he is qualified and entitled to sit until proven otherwise. *Kirby v. Chapman*, 917 S.W.2d 902, 908 (Tex.App.—Fort Worth 1996, no writ). More importantly, to prevent the jurist from sitting takes more than mere innuendo and conclusory allegations. *Rogers v. Bradley*, 909 S.W.2d 872, 881 (Tex.1995).[1] Rather, those endeavor-

ing to remove him must tender proof establishing the purported disqualification or basis for recusal. *Id.* Simply put, they must prove, through admissible evidence, that the judge cannot sit. *Id.*

Second, and contrary to the statement of the Williamses, Texas Rule of Civil Procedure 18b does not dictate when an appellate justice is disqualified from sitting. Instead, disqualification is "determined by the Constitution and laws of Texas." TEX. R.APP. P. 16.1; *A.H. Belo Corp. v. Southern Methodist University*, 734 S.W.2d 720, 722 (Tex.App.—Dallas 1987, writ denied) (holding that the only grounds for disqualification are those found in the Texas Constitution and under state statute).[2] To the extent they cite *Resendez v. Schwartz*, 940 S.W.2d 714 (Tex.App.—El Paso 1996, no writ) as support for their position, one must note that *Resendez* involved the pre 1997 rules of appellate procedure. Effective September 1, 1997, the rules, including those pertaining to the disqualification of judges, changed. And, while the grounds applicable to *recusing* an appellate court justice remain those appearing in Texas Rule of Civil Procedure 18b (*see* TEX. R.APP. P. 16.2) none apply at bar.[3] So, to the extent that the contention of the Williamses may have had some support three years ago, *it does not now.*

As to the purported grounds for recusal, the first concerns my receipt of "[s]everal

---

**1.** I recognize that *Rogers v. Bradley*, 909 S.W.2d 872, 881 (Tex.1995) is not a majority opinion of the Texas Supreme Court but it has been cited by many courts as authority. Furthermore, the case has been cited for its guidance in determining the standards to be used and the application of the governing laws when the court is faced with a motion to recuse or disqualify a judge.

**2.** The predecessor to Rule 16.1(Texas Rule of Appellate Procedure 15a) stated that a judge on the court of appeals was obligated to "disqualify or recuse himself in any proceeding in

which judges must disqualify or recuse themselves under Texas Rule of Civil Procedure 18b, or in which he participated in the trial or decision ... below."

**3.** It is noteworthy that the Williamses merely contend that I should be recused. They did not argue that I am disqualified from sitting in this cause, although they intimated that I was so disqualified *viz* another appeal in which they were involved. That I was not disqualified then will be addressed *infra*.

hundred dollars" in campaign contributions from the law firm representing the appellee in this matter. That a judge received such contributions was rejected years ago as a basis for recusal. *J–IV Inv. v. David Lynn Mach., Inc.,* 784 S.W.2d 106, 107–108 (Tex.App.—Dallas 1990, no writ) (involving a $500 contribution); *Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 842–45 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (involving a $10,000 contribution); *Rocha v. Ahmad,* 662 S.W.2d 77, 78 (Tex.App.—San Antonio 1983, no writ). Furthermore, the rule has yet to change.

The second ground implicates my candidacy for re-election to this Court. The Williamses alleged that they "vigorously campaigned for [my] opponent who was at the time and remains now" their counsel. And, because of their political activity and the effort of counsel to defeat my re-election, I should be deemed biased. This contention is but a shade of that rejected in *J–IV Investments, Texaco,* and *Rocha.* If supporting a judge's re-election through financial contribution does not *ipso facto* constitute grounds for recusal, it cannot logically follow that supporting an opponent does. Indeed, the *Rocha* court stated as much. In analyzing and discarding the notion that contributions to a judge warranted recusal, the court stated that "[p]erhaps the next step would be to require a judge to recuse ... in any case in which one of the lawyers had refused to contribute or, worse still, had contributed to that judge's opponent." *Rocha v. Ahmad,* 662 S.W.2d at 78. Such a result was untenable in the eyes of the court. In

effect, if a judge could not sit on those cases where counsel or the litigants aided his re-election efforts and on those where they did not, then it is questionable whether the judge could ever sit.

Moreover, courts elsewhere have expressly rejected the argument that a judge must recuse himself in those situations wherein an attorney for one of the litigants challenged the judge in an election. *Pierce v. Charity Hospital of La.,* 550 So.2d 211, 215. (Ct.App.1989, writ denied); *Reach v. Reach,* 378 So.2d 1115, 1117 (Ala.Ct.App.1979). This is especially so in absence of any evidence of animosity between the two candidates, such as the circumstances here. *See Pierce v. Charity Hospital of La.,* 550 So.2d at 215 (considering the lack of animosity in holding that recusal was unnecessary). As noted by the court in *Pierce,* "[c]ompetition inherent in our adversarial political system, including judicial contests, does not translate into personal bias, animosity, or prejudice, between ... candidates" to the office. *Pierce v. Charity Hospital,* 550 So.2d 211 at 215. Similar logic would also compel the conclusion that any political activity undertaken against me by those whom counsel represents would also fail to constitute a basis for recusal. Again, as illustrated in *Pierce* and *Reach,* mere political activity against a judicial candidate (in which not only counsel but her clients had the right to engage) cannot reasonably constitute a basis for presuming impermissible animus or bias. Rather, evidence of same is necessary and the Williamses tendered none.[4]

---

4. Aside from the mere statement that they "vigorously campaigned" on behalf of their counsel, nothing indicates that the Williamses actually did. Nor does anything of record reveal the extent, if any, of their efforts. Nor did they provide evidence of record illustrating that I personally knew of their efforts, if

any, or that I felt aggrieved by same. If the simple fact that someone campaigned or voted against a judge was a basis to recuse the judge, then it is conceivable that the judge would have to relinquish a major portion of his docket. Yet, unlike the course pursued by the barbaric, one who defeats another in an

The next ground supposedly warranting recusal concerns my prior involvement in a case between the Williamses and the Lubbock Independent School District. Although undisclosed by the Williamses, that particular case was *Williams v. Chatman* and is cited at 17 S.W.3d 694 (Tex.App.—Amarillo 1999, pet. denied). I sat as one of three justices on the panel that addressed the appeal. According to the Williamses, I was disqualified from sitting on that panel under Texas Rule of Civil Procedure 18b(1)(a) because I had "practiced law" with counsel for the school district. Assuming that it applies to an appellate court justice (*see* discussion above) Rule 18b(1)(a) obligates judges to disqualify themselves in all proceedings in which ". . . a lawyer with whom they previously practiced law served during such association as a lawyer concerning the matter." A plain reading of this rule imparts several elements which must be satisfied before disqualification occurs. Among them is that requiring the judge to have practiced law with a lawyer involved in the "matter." Another requires the lawyer to have served as counsel in the "matter" during the period in which the judge and lawyer practiced together. The latter prong is non-existent here. I was sworn in as a justice on this court on or about January 3, 1995.[5] Yet, the "matter" spawning *Williams v. Chatman* occurred on May 22, 1995, the date that the unfortunate incident occurred. *See Williams v. Chatman*, 17 S.W.3d at 696. As can be seen, the incident occurred over four months after I had ceased practicing law with the school district's attorney. Given this and the truism that the school district could not have retained my ex-law partner to

represent it in the "matter" until the "matter" had arose, any conclusion that I was associated with the lawyer at the time the lawyer was retained as counsel in the "matter" is clearly wrong. In short, Rule 18b(1)(a) posed no bar to my participation in *Williams v. Chatman*. Thus, my non-disqualification there is not a basis for my recusal here.

Next, the Williamses argue that I had a financial interest in another lawsuit allegedly pending between them and Texas Tech University, that this purported interest allegedly disqualifies me from sitting in the other suit, and, that since I am supposedly disqualified there, I must be recused here. This contention too fails to survive analysis.

The purported financial interest arises from the fact that I teach class, at various times, at the Texas Tech School of Law and maintain an office at the same facility. It long has been established that the type of interest required for disqualification is one of a pecuniary nature that the judge may gain or lose by the judgment rendered in the case. *Maxey v. Citizens Nat. Bank.*, 489 S.W.2d 697, 702 (Tex.Civ. App.—Amarillo 1972) *reversed on other grounds*, 507 S.W.2d 722 (Tex.1974); *accord King and Another v. Sapp*, 66 Tex. 519, 520, 2 S.W. 573 (1886). That interest must not only be capable of valuation, *id.*, but it must also be direct, real, and certain in the subject matter and result *of the instant litigation*. *Maxey v. Citizens Nat. Bank*, 489 S.W.2d at 702.

Here, assuming *arguendo* that the Williamses have sued Texas Tech University, they have failed to describe, much less prove, any pecuniary benefit capable

election gains not some right to vanquish his opponent and the latter's supporters. Rather, he is cast with the honorable duty of meting out justice for and enforcing the law applica-

ble *to all,* including those that sought to elect another.

5. I request the court to take judicial notice of this fact.

of estimated value, that I may gain or lose by a judgment rendered in the supposed cause. That I may receive funds for teaching a class at the university's law school or office at the law school hardly proves such an interest. Nowhere do the Williamses attempt to prove that my opportunity to assist in the teaching of future attorneys or office at the law school is somehow dependent upon the outcome of that case. And, admirably, they have the good judgment not to posit that I have agreed to side with the university in litigation in exchange for teaching and maintaining office space at its law school. Finally, and similarly unexplained and unproved, is how adjudication of the pending cause would impact their rights, if any, *viz* their alleged suit with Texas Tech.

In sum, to conclude that because I office at a locale provided by, or intermittently receive a stipend from, a governmental entity I must have a financial interest mandating disqualification or recusal is to adopt the untenable. If this were not so then an appellate judge could not entertain matters involving the state because the state provides them an office and funds. Nor could the appellate judges resolve controversies involving those counties that also provide them a stipend or an office in the county courthouse. Although relieving me from such duties would certainly afford me more time to spend on other cases pending before this court, logic, common sense, and the law deny me the opportunity. Merely receiving a place to work or funds from the state does not establish bias or grounds to recuse *viz* appeals involving the state. More than some tangential interest like that uttered at bar is required before I must eschew my duties of office. Since the Williamses have failed to establish a prohibitive interest between myself, Texas Tech, and their alleged suit against the university, I would not be disqualified from participating in the resolution of that alleged suit. Consequently, my non-disqualification there could not form a basis for recusal here.

Recusal may be necessary when a reasonable member of the public at large, knowing all the facts in the public domain, could reasonably question a judge's impartiality. Yet, that is not the situation at bar. For motive known only to the Williamses and their counsel, they have chosen to try and prohibit me from performing my sworn duty. In doing so, their contentions have been supported by nothing other than unfounded allegation and legal proposition long since rejected by the courts. That is hardly the stuff upon which reasonable members of the public would, or can, act. If I were disqualified or remotely subject to legitimate recusal, I would avoid participating in the appeal. But, I am not. Nor does the record, or lack thereof, permit a reasonable member of the public, *aware of all the facts*, to question my impartiality.

The 2000 Republican primary election is over. It and the fact that the office for place one on the Seventh Court of Appeals was contested must be laid to rest. I do so by refusing to voluntarily recuse myself and by requesting that I be allowed to perform my duties of office without further interference emanating from that race.

REAVIS, Justice, concurring.

I join in the opinion by Chief Justice John T. Boyd, however I write separately regarding movants' contention that Justice Brian Quinn should recuse himself because he has a "financial interest in the subject matter in controversy or in a party to the proceeding" from a slightly different perspective.

Movants contend that because Texas Tech School of Law provides Justice Quinn with an office and he serves as an instruc-

tor on a part-time basis at the School of Law compels that he should be recused. I disagree. The alleged financial interest is not grounds for recusal under Rules 16.1, 16.2, 16.3 of the Texas Rules of Appellate Procedure, nor Rule 18b(2) and (f)(ii) of the Texas Rules of Civil Procedure as movants contend. First, any benefit accruing to Justice Quinn is not a "financial interest in the subject matter in controversy or in a party to the proceeding." Tex.R. Civ. P. 18b(2), (3). Second, Texas law recognizes the common law maximum of *de minimis non curat lex*.[1] HSAM Inc. v. Gatter, 814 S.W.2d 887, 892 (Tex.App.— San Antonio 1991, writ dism'd by agr.). Movants have not cited any authority holding or suggesting that in actions where the State of Texas is a party, that because State judges or justices are on the State payroll, they have a financial interest or other interest requiring their recusal. Similarly, even though Texas Tech University provides Justice Quinn with an office, and he teaches part-time at the School of Law, the *de minimus* applies to whatever financial interest may be implicated.

---

1. The law does not concern itself about trifles.