NO. 07-00-0414-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



JANUARY 8, 2001



______________________________




LINDA WILLIAMS AND JOHN W. WILLIAMS, INDIVIDUALLY


AND AS REPRESENTATIVES OF THE ESTATE OF JOHN


WESLEY WILLIAMS, JR., DECEASED, APPELLANTS



V.



BALUSWAMY VISWANATHAN, M.D., APPELLEE




_________________________________



FROM THE 72nd DISTRICT COURT OF LUBBOCK COUNTY;



NO. 97-560,756; HONORABLE J. BLAIR CHERRY, JR., JUDGE



_______________________________



Before BOYD, C.J., and REAVIS, J.

ON APPELLANTS' DISQUALIFICATION AND RECUSAL MOTION


 Appellants have filed a motion seeking to disqualify Justice Phil Johnson and to
recuse Justice Brian Quinn. Texas Rule of Civil Procedure 18b lists the reasons why a
judge, which we assume would include an appellate justice, should disqualify himself or
herself from participation in a pending matter, as well as the reasons why such a judge or
justice should recuse himself or herself in a pending matter. 

 Texas Rule of Appellate Procedure 16 deals particularly with appellate judges and
includes the procedure by which motions such as this may be determined. 

Justice Phil Johnson

 Justice Johnson agrees that he is disqualified to participate in the determination of
this cause because of his prior involvement as an attorney in this case at the trial court
level. Accordingly, no further discussion of appellants' motion in that regard is necessary.

Justice Brian Quinn

 Section 16.3 is the portion of Tex. R. App. P. 16 that prescribes the procedure for
presenting motions seeking to recuse a sitting justice. Subsection (b) of that section
provides that subsequent to the filing of a recusal motion, and before proceeding any
further in the case, the challenged justice or judge must "either remove himself or herself
from all participation in the case or certify the matter to the entire court, which will decide
the motion by a majority of the remaining judges sitting en banc." Tex. R. App. P. 16.3(b). 
Thus, a motion to recuse simply initiates a more formal process of consideration. Justice
Quinn has certified the reasons why he does not believe he should recuse himself to the
two members of the court who are not the subjects of the recusal motion and has stated
in some detail his reasons for doing so. It now becomes our duty to decide the motion.

 Appellants initially seek Justice Quinn's recusal pursuant to the Tex. R. Civ. P.
18b(2) mandate that a judge shall recuse himself in any proceeding in which his
impartiality might reasonably be questioned. The gist of appellants' initial challenge to
Justice Quinn is that appellants' attorney unsuccessfully challenged him in the 2000
Republican primary and that appellants "not only did not contribute to Justice Quinn's
campaign, but also vigorously campaigned for his opponent who was at the time and
remains now, the undersigned counsel." They also point out that "[s]everal hundred dollars
of the monies collected and expended on Justice Quinn's behalf came from the law firm
representing Dr. Viswanathan." Thus, they conclude, "[a] reasonable member of the public
at large, knowing all the facts in the public domain would doubt that Justice Quinn could
be impartial in these proceedings."

 In considering this initial argument, we first note that appellants do not present any
grounds for constitutional or rule-based disqualification in regard to Justice Quinn. See
Tex. Const. art. V, § 11; Tex. R. App. P. 16.1. We also note that it is the duty of a judge
or justice to sit and decide matters brought before the court upon which the judge or justice
serves. Sun Oil Co. v. Whitaker, 483 S.W.2d 808, 823-24 (Tex. 1972); Tex. Code Jud.
Conduct, Canon 3(B)(1), reprinted in Tex. Gov't Code Ann., tit.2, subtit. G app. B (Vernon
Supp. 2000). It has been well said that "[t]here is as much obligation for a judge not to
recuse when there is no occasion for him to do so as there is for him to do so when there
is." U.S. v. Burger, 964 F.2d 1065, 1070 (10th Cir.1992), cert. denied, 507 U.S. 1033, 113
S.Ct. 1854, 123 L.Ed.2d 477 (1993) (quoting Hinman v. Rogers, 831 F.2d 937, 939 (10th
Cir. 1987)).

 Texas Rule of Civil Procedure 18b(2)(a) provides that a judge shall recuse himself
or herself in any proceeding in which "his impartiality might reasonably be questioned." 
The provision furnishes the basis upon which movants seek to recuse Justice Quinn. The
challenge presented by movants is a direct result of the system for selection of judges
which has long been utilized in this state, namely a "no holds barred" partisan election.
There are relatively few active judges in this state who have not at one time or another
gone through a contested election. This is particularly true of our two highest courts. If
a per se rule existed that a sitting judge should recuse merely because a lawyer who
unsuccessfully ran against that judge or a supporter of that challenger represents a litigant
before that sitting judge, the efficiency of our judicial system would be seriously
compromised. We do not believe that, without more, a mere allegation that a litigant's
lawyer entered the elective process and that the litigant supported his lawyer's efforts is
sufficient to show that a reasonable person might doubt a sitting justice's ability to be
impartial. 

 It is virtually impossible to articulate a bright line test that would govern instances
such as this. Of necessity, the determination whether recusal is necessary must be made
on a case-by-case fact-intensive basis. There is a paucity of relevant Texas authority to
aid us in our decision. However, four justices of the federal supreme court, in interpreting
a statutory requirement similar to that contained in our rule, opined that a reasonable
question as to a justice's impartiality "is triggered by an attitude or state of mind so
resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing
court to have reasonable grounds to question the neutral and objective character of a
judge's rulings or findings." Liteky v. U.S., 510 U.S. 540, 556, 114 S.Ct. 1147, 1158, 127
L.Ed.2d 474 (1994) (Kennedy, J., concurring, joined by Blackmun, Stevens, and Souter,
JJ.). 

 As we have noted, even though there is very little helpful Texas authority, we have
found the approach of former El Paso Court of Appeals Chief Justice Max Osborn in his
concurring opinion in Aguilar v. Anderson, 855 S.W.2d 799 (Tex.App.--El Paso 1993, writ
denied) most helpful. In that case, with reference to the Tex. R. Civ. P. 18b(2)(a)
impartiality provision, Justice Osborn opined, "[a]fter all [,] the impartial standard has been
adopted in order that the public, i.e., the person on the street, might have confidence in the
judiciary and to protect judges from unjustified complaints about their being partial in their
decision." Id. at 804-05. We agree with that reasoning. See Lueg v. Lueg, 976 S.W.2d
308, 310 (Tex.App.--Corpus Christi 1998, pet. denied).

 We also agree with Chief Justice Osborn that a reasonable person must be aware
of the facts surrounding our judiciary and must know that our judges have to stand for
election on a regular basis, that elections cost money, and that money must be raised to
conduct an effective campaign. Aguilar, 855 S.W.2d at 805. Suffice it to say, within the
framework of the system mandated by the people of Texas over a long period of time, in
order to require a sitting justice to recuse, something more than the mere fact that he or
she prevailed in a contested election and that contributions were received must be shown.

 It is significant that there are no allegations or showing of any personal animosity
between Justice Quinn and his opponent. This, we believe, is a most important element
in showing a rational basis for recusal. Our state's long judicial history teaches that the
competition inherent in an adversarial judicial system does not always translate into bias
or prejudice against a candidate. See Pierce v. Charity Hospital of Louisiana at New
Orleans., 550 So.2d 211, 215 (Ct. App. 1989, writ denied); Reach v. Reach, 378 So.2d
1115, 1117 (Ala. Ct. App. 1979), cert. denied, 378 So.2D 1118 (Ala. 1980). It also follows
that the mere fact that a litigant supported his attorney in a race against a sitting justice,
again without more, is not sufficient to require recusal. Indeed, if such a path were begun,
very seldom would the justices and judges of our two courts of last resort be able to
perform their mandated duties. See Rocha v. Ahmad, 662 S.W.2d 77, 78 (Tex.App.--San
Antonio 1983, no writ). 

 With regard to the allegation that bias is shown because appellants' opposing
counsel made contributions to Justice Quinn's campaign, we agree that argument has
been rejected by the courts of this state. See J-IV Inv. v. David Lynn Mach., Inc., 784
S.W.2d 106, 107-08 (Tex.App.--Dallas 1990, no writ); Texaco, Inc. v. Pennzoil Co., 729
S.W.2d 768, 842-45 (Tex.App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.), cert. dismissed,
485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

 Appellants also argue that Justice Quinn should recuse himself because he has a
"personal bias or prejudice concerning the subject matter of these proceedings." As best
we can tell, appellants are referring to Justice Quinn sitting as one of the three justices 
who decided Williams v. Chatman, 17 S.W.3d 694 (Tex.App.--Amarillo 1999, pet. denied). 
Appellants contend that Justice Quinn was disqualified under Rule 18b(1)(a) because he
had "practiced law" with one of the counsel representing the Lubbock Independent School
District in that case. In relevant part, that rule provides that judges should disqualify
themselves in all proceedings in which ". . . a lawyer with whom they previously practiced
law served during such association as a lawyer concerning such matter" (emphasis
added.)

 By its clear language, the rule refers to an association with another lawyer during
the period of time a "matter" was being handled by the attorney in question. Justice Quinn
was sworn in as a member of this court on or about January 3, 1995. Perusal of the
Williams opinion reveals that the occurrence involved there occurred on May 22, 1995. 
Williams, 17 S.W.3d at 696. This was some four and one-half months after Justice Quinn
became a member of this court and the case was heard some four years after the incident.
Parenthetically, the opinion in question was written by another member of the court. None
of the alleged facts show any disqualification of Justice Quinn from sitting on the case.

 Appellants also argue that there is "a pending lawsuit against Texas Tech
University" and that because Justice Quinn "offices at the University and serves as an
Adjunct Professor, he has a financial interest in that suit." Initially, we note that Texas
Tech is not a party to the suit underlying this motion and the issue really is not relevant
here. However, because the question could arise later, we will address this contention.

 This court has stated, and previously adhered to, the rule that the type of interest
required for disqualification must be of a pecuniary nature so that the judge would gain or
lose by the judgment rendered in the case. Maxey v. Citizens Nat. Bank of Lubbock, 489
S.W.2d 697, 702 (Tex.Civ.App.--Amarillo 1972), rev'd on other grounds, 507 S.W.2d 722
(Tex. 1974); accord King v. Sapp, 66 Tex. 519, 520, 2 S.W. 573-74 (1886). The pecuniary
interest must be capable of valuation. It must also be direct, real, and certain and be in
the subject matter and in the result of the case in question. Maxey, 489 S.W.2d at 702.

 Nothing that appellants have alleged shows that Justice Quinn has any sufficient
pecuniary interest to disqualify him in a pending suit against Texas Tech. The mere fact
that he offices at the university and serves as an adjunct professor is not sufficient to show
the requisite pecuniary interest in the outcome of the suit. 

 In sum, we find no mandatory basis requiring Justice Quinn's recusal and overrule
appellants' motion for disqualification and recusal as it applies to Justice Quinn.


 John T. Boyd

 Chief Justice

Publish.



NO. 07-00-0414-CV


IN THE COURT OF APPEALS


FOR THE SEVENTH DISTRICT OF TEXAS


AT AMARILLO


PANEL D


NOVEMBER 20, 2000 

______________________________


LINDA WILLIAMS and JOHN W. WILLIAMS, INDIVIDUALLY AND AS
REPRESENTATIVES OF THE ESTATE OF JOHN WESLEY WILLIAMS, DECEASED,


Appellants


v.


BULUSWAMY VISWANATHAN, M.D.,


 Appellee

_________________________________


FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;


NO. 97-560-756; HON. J. BLAIR CHERRY, PRESIDING

_______________________________


CERTIFICATION PURSUANT TO 

TEXAS RULE OF APPELLATE PROCEDURE 16.3(B)

_______________________________


Before BOYD, C.J., QUINN and REAVIS, JJ.

 For the following reasons, I decline to voluntarily recuse myself pursuant to the
motion of Linda and John Williams (the Williamses) filed in the above referenced cause. 
In so declining, I further certify the matter to the entire court pursuant to Texas Rule of
Appellate Procedure 16.3(b).

 First, it is beyond gainsay that jurists have a duty to entertain and resolve pending
causes unless disqualified or legitimately recused. Love v. Wilcox, 119 Tex. 256, 264, 28
S.W.2d 515, 518 (1930). Thus, one assessing the ability of a jurist to perform his duties
viz-a-viz a particular matter must begin with the premise that he is qualified and entitled to
sit until proven otherwise. Kirby v. Chapman, 917 S.W.2d 902, 908 (Tex. App.--Fort Worth
1996, no writ) . More importantly, to prevent the jurist from sitting takes more than mere
innuendo and conclusory allegations. Rogers v. Bradley, 909 S.W.2d 872, 881 (Tex.
1995). (1) Rather, those endeavoring to remove him must tender proof establishing the
purported disqualification or basis for recusal. Id. Simply put, they must prove, through
admissible evidence, that the judge cannot sit. Id. 

 Second, and contrary to the statement of the Williamses, Texas Rule of Civil
Procedure 18b does not dictate when an appellate justice is disqualified from sitting. 
Instead, disqualification is "determined by the Constitution and laws of Texas." Tex. R. App.
P. 16.1; A.H. Belo Corp. v. Southern Methodist University, 734 S.W.2d 720, 722 (Tex. App.--Dallas 1987, writ denied) (holding that the only grounds for disqualification are those found
in the Texas Constitution and under state statute). (2) To the extent they cite Resendez v.
Schwartz, 940 S.W.2d 714 (Tex. App.--El Paso 1996, no writ) as support for their position,
one must note that Resendez involved the pre-1997 rules of appellate procedure. Effective
September 1, 1997, the rules, including those pertaining to the disqualification of judges,
changed. And, while the grounds applicable to recusing an appellate court justice remain
those appearing in Texas Rule of Civil Procedure 18b (see Tex. R. App. P. 16.2) none apply
at bar. (3) So, to the extent that the contention of the Williamses may have had some support
three years ago, it does not now.

 As to the purported grounds for recusal, the first concerns my receipt of "[s]everal
hundred dollars" in campaign contributions from the law firm representing the appellee in
this matter. That a judge received such contributions was rejected years ago as a basis for
recusal. J-IV Inv. v. David Lynn, Inc., 784 S.W.2d 106, 107-108 (Tex. App.--Dallas 1990,
no writ) (involving a $500 contribution); Texaco, Inc. v. Pennzoil Co., 729 S.W.2d 768, 842-45 (Tex. App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.) (involving a $10,000 contribution);
Rocha v. Ahmad, 662 S.W.2d 77, 78 (Tex. App.--San Antonio 1983, no writ). Furthermore,
the rule has yet to change. 

 The second ground implicates my candidacy for re-election to this Court. The
Williamses alleged that they "vigorously campaigned for [my] opponent who was at the time
and remains now" their counsel. And, because of their political activity and the effort of
counsel to defeat my re-election, I should be deemed biased. This contention is but a
shade of that rejected in J-IV Investments, Texaco, and Rocha. If supporting a judge's re-election through financial contribution does not ipso facto constitute grounds for recusal,
it cannot logically follow that supporting an opponent does. Indeed, the Rocha court stated
as much. In analyzing and discarding the notion that contributions to a judge warranted
recusal, the court stated that "[p]erhaps the next step would be to require a judge to recuse
. . . in any case in which one of the lawyers had refused to contribute or, worse still, had
contributed to that judge's opponent." Rocha v. Ahmad, 662 S.W.2d at 78. Such a result
was untenable in the eyes of the court. In effect, if a judge could not sit on those cases
where counsel or the litigants aided his re-election efforts and on those where they did not,
then it is questionable whether the judge could ever sit. 

 Moreover, courts elsewhere have expressly rejected the argument that a judge must
recuse himself in those situations wherein an attorney for one of the litigants challenged
the judge in an election. Pierce v. Charity Hospital of La., 550 So. 2d 211, 215. Ct. App.
1989, writ denied); Reach v. Reach, 378 So. 2d 1115, 1117 (Ala. Ct. App. 1979). This is
especially so in absence of any evidence of animosity between the two candidates, such
as the circumstances here. See Pierce v. Charity Hospital of La., 550 So. 2d at 215
(considering the lack of animosity in holding that recusal was unnecessary). As noted by
the court in Pierce, "[c]ompetition inherent in our adversarial political system, including
judicial contests, does not translate into personal bias, animosity, or prejudice, between . . .
candidates" to the office. Pierce v. Charity Hospital, 550 So. 2d 211 at 215. Similar logic
would also compel the conclusion that any political activity undertaken against me by those
whom counsel represents would also fail to constitute a basis for recusal. Again, as
illustrated in Pierce and Reach, mere political activity against a judicial candidate (in which
not only counsel but her clients had the right to engage) cannot reasonably constitute a
basis for presuming impermissible animus or bias. Rather, evidence of same is necessary
and the Williamses tendered none. (4)

 The next ground supposedly warranting recusal concerns my prior involvement in
a case between the Williamses and the Lubbock Independent School District. Although
undisclosed by the Williamses, that particular case was Williams v. Chatman and is cited
at 17 S.W.3d 694 (Tex. App.-- Amarillo 1999, pet. denied). I sat as one of three justices
on the panel that addressed the appeal. According to the Williamses, I was disqualified
from sitting on that panel under Texas Rule of Civil Procedure 18b(1)(a) because I had
"practiced law" with counsel for the school district. Assuming that it applies to an appellate
court justice (see discussion above) Rule 18b(1)(a) obligates judges to disqualify
themselves in all proceedings in which ". . . a lawyer with whom they previously practiced
law served during such association as a lawyer concerning the matter." A plain reading of
this rule imparts several elements which must be satisfied before disqualification occurs. 
Among them is that requiring the judge to have practiced law with a lawyer involved in the
"matter." Another requires the lawyer to have served as counsel in the "matter" during the
period in which the judge and lawyer practiced together. The latter prong is non-existent
here. I was sworn in as a justice on this court on or about January 3, 1995. (5) Yet, the
"matter" spawning Williams v. Chatman. occurred on May 22, 1995, the date that the
unfortunate incident occurred. See Williams v. Chatman, 17 S.W.3d at 696. As can be
seen, the incident occurred over four months after I had ceased practicing law with the
school district's attorney. Given this and the truism that the school district could not have
retained my ex-law partner to represent it in the "matter" until the "matter" had arose, any
conclusion that I was associated with the lawyer at the time the lawyer was retained as
counsel in the "matter" is clearly wrong. In short, Rule 18b(a)(1) posed no bar to my
participation in Williams v. Chatman. Thus, my non-disqualification there is not a basis for
my recusal here.

 Next, the Williamses argue that I had a financial interest in another lawsuit allegedly
pending between them and Texas Tech University, that this purported interest allegedly
disqualifies me from sitting in the other suit, and, that since I am supposedly disqualified
there, I must be recused here. This contention too fails to survive analysis. 

 The purported financial interest arises from the fact that I teach class, at various
times, at the Texas Tech School of Law and maintain an office at the same facility. It long
has been established that the type of interest required for disqualification is one of a
pecuniary nature that the judge may gain or lose by the judgment rendered in the case. 
Maxey v. Citizens Nat. Bank., 489 S.W.2d 697, 702 (Tex. Civ. App.--Amarillo 1972)
reversed on other grounds, 507 S.W.2d 722 (Tex. 1974); accord King & Davidson v. Sapp,
66 Tex. 519, 520 2 S.W. 573 (1886). That interest must not only be capable of valuation,
id., but it must also be direct, real, and certain in the subject matter and result of the instant
litigation. Maxey v. Citizens Nat. Bank, 489 S.W.2d at 702.

 Here, assuming arguendo that the Williamses have sued Texas Tech University,
they have failed to describe, much less prove, any pecuniary benefit capable of estimated
value, that I may gain or lose by a judgment rendered in the supposed cause. That I may
receive funds for teaching a class at the university's law school or office at the law school
hardly proves such an interest. Nowhere do the Williamses attempt to prove that my
opportunity to assist in the teaching of future attorneys or office at the law school is
somehow dependent upon the outcome of that case. And, admirably, they have the good
judgment not to posit that I have agreed to side with the university in litigation in exchange
for teaching and maintaining office space at its law school. Finally, and similarly
unexplained and unproved, is how adjudication of the pending cause would impact their
rights, if any, viz their alleged suit with Texas Tech. 

 In sum, to conclude that because I office at a locale provided by, or intermittently
receive a stipend from, a governmental entity I must have a financial interest mandating
disqualification or recusal is to adopt the untenable. If this were not so then an appellate
judge could not entertain matters involving the state because the state provides them an
office and funds. Nor could the appellate judges resolve controversies involving those
counties that also provide them a stipend or an office in the county courthouse. Although
relieving me from such duties would certainly afford me more time to spend on other cases
pending before this court, logic, common sense, and the law deny me the opportunity. 
Merely receiving a place to work or funds from the state does not establish bias or grounds
to recuse viz appeals involving the state. More than some tangential interest like that
uttered at bar is required before I must eschew my duties of office. Since the Williamses
have failed to establish a prohibitive interest between myself, Texas Tech, and their alleged
suit against the university, I would not be disqualified from participating in the resolution of
that alleged suit. Consequently, my non-disqualification there could not form a basis for
recusal here.

 Recusal may be necessary when a reasonable member of the public at large,
knowing all the facts in the public domain, could reasonably question a judge's impartiality. 
Yet, that is not the situation at bar. For motive known only to the Williamses and their
counsel, they have chosen to try and prohibit me from performing my sworn duty. In doing
so, their contentions have been supported by nothing other than unfounded allegation and
legal proposition long since rejected by the courts. That is hardly the stuff upon which
reasonable members of the public would, or can, act. If I were disqualified or remotely
subject to legitimate recusal, I would avoid participating in the appeal. But, I am not. Nor
does the record, or lack thereof, permit a reasonable member of the public, aware of all the
facts, to question my impartiality. 

 The 2000 Republican primary election is over. It and the fact that the office for place
one on the Seventh Court of Appeals was contested must be laid to rest. I do so by
refusing to voluntarily recuse myself and by requesting that I be allowed to perform my
duties of office without further interference emanating from that race.

 

 Brian Quinn

 Justice



Publish.
1. 
 
 
 
2. 
 " 
 " 
 
3. 
 
 
4. " " 
 
 
 
 
 '
 
 
5. I request the court to take judicial notice of this fact.