# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR RECUSAL

### NO. 03-05-00585-CR
### NO. 03-05-00586-CR

**Ex parte James W. Ellis**

### NO. 03-05-00589-CR
### NO. 03-05-00590-CR
### NO. 03-05-00591-CR
### NO. 03-05-00592-CR
### NO. 03-05-00593-CR
### NO. 03-05-00594-CR
### NO. 03-05-00595-CR
### NO. 03-05-00596-CR
### NO. 03-05-00597-CR
### NO. 03-05-00598-CR
### NO. 03-05-00599-CR
### NO. 03-05-00600-CR
### NO. 03-05-00601-CR
### NO. 03-05-00602-CR
### NO. 03-05-00603-CR

**Ex parte John Dominick Colyandro**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT**
**NOS. D-1-DC-2005-904122, 9040564, 9040570, 9040571, 9040572, 9040573, 9040574,**
**9040575, 9040576, 9040577, 9040565, 9040566, 9040567, 9040568, 9040569,**
**9040598 & D1DC-05-904121**
**HONORABLE BOB PERKINS, JUDGE PRESIDING**

## D I S S E N T I N G   O P I N I O N

Litigants have a right to a fair and impartial judiciary. The State of Texas, as the steward of the judicial system, has the obligation to create such a forum, to promote public confidence in the courts, and to safeguard the courts from even the appearance of impartiality or corruption, including political bias or favoritism. As life and liberty are at issue in a criminal proceeding, a judge's impartiality—and the parties' perception of that impartiality—is of critical importance to the parties and society. Indeed, impartiality and the perception of impartiality are a defining feature of the judicial role. Because recusal serves to safeguard that role, I dissent to the Court's denial of the motion for recusal.

The facts are these:

- These accelerated appeals were filed in this Court over three years ago in September 2005.

- The parties filed their briefs and the causes were originally submitted to the Court to be decided on the briefs, without oral argument, in January 2006.

- Cause Nos. 03-05-00585-CR and 03-05-00586-CR (the "Ellis" appeals) were submitted to the panel consisting of Justices B. A. Smith, Patterson and Puryear. The remaining causes (the "Colyandro" appeals) were submitted to the panel consisting of Chief Justice Law, Justices Pemberton and Waldrop.

- Six months later, these submissions were cancelled without consultation or explanation, and all of the causes were reset for a specially scheduled end-of-summer oral argument on August 22, 2006, before the panel consisting of Chief Justice Law, Justices Pemberton and Waldrop.

- The Court's notice instructed the parties as follows:

  You are hereby notified that this Court has determined that the above referenced causes should be orally argued. Submission on briefs has

2

this date been canceled and the causes are reset for submission and oral argument on Tuesday, August 22, 2006 at 9:00 AM, before Chief Justice Law, Justices Pemberton and Waldrop.

- Although these cases were originally assigned to different panels, no explanation was given for the reassignment of the Ellis appeals from the Smith, Patterson, Puryear panel to the Law, Pemberton, Waldrop panel.[1]

- Two years later, the Court issued its opinion in these *accelerated* appeals, written by Justice Waldrop.

- On rehearing, the State filed a motion to recuse Justice Waldrop, and on September 25, 2008, Justice Waldrop advised the other justices that he declined to recuse himself.[2]

The rules of appellate procedure provide that "the challenged judge or justice must either remove himself from all participation in the case, or certify the matter to the entire court, which will decide the motion by a majority of the remaining judges sitting en banc." Tex. R. App. P. 16.3(b). For the first time, on December 19, 2008, Justice Waldrop circulated to the justices of this Court the required Rule 16.3(b) certification.

---

[1] Because of the unexplained reassignment of these cases and their apparent consolidation before a different panel, I dissented from the Court's decision not to hear these appeals en banc.

[2] It is questionable whether this communication satisfies the requirement of the rule. *See* Tex. R. App. P. 16.3(b) (requiring certification). Black's Law Dictionary defines the term "certify" to mean "to authenticate or verify in writing." *See* Black's Law Dictionary 220 (7th ed. 1999). At least one court of appeals to consider the matter has held that the filing of a motion to recuse initiates a "more formal process of consideration." *See Williams v. Viswanathan*, 65 S.W.3d 685, 687 (Tex. App.—Amarillo 2001, no pet.). In that case, the challenged Justice "certified the reasons why he does not believe he should recuse himself to the two members of the court who are not the subjects of the recusal motion and has stated in some detail his reasons for doing so." *Id.*; *see also Rogers v. Bradley*, 909 S.W.2d 872, 873 (Tex. 2004) (Gammage, J.) (declaration of recusal).

I asked the clerk of this Court on more than one occasion—in writing with notice to the other justices—to request a response to the State's motion. The three-judge majority has opposed the request for a response and, to date, a response has not been requested or otherwise submitted.

Without a response, the facts alleged in the State's motion are uncontroverted. The State asserts that, while in private practice before accepting his appointment as a justice on this Court, Justice Waldrop served as counsel for the group Texans for Lawsuit Reform (TLR) and filed several pleadings in the civil cause of action related to these criminal proceedings now before us. The plaintiffs in the civil proceedings served TLR with a deposition by written questions and a subpoena duces tecum seeking documents and records reflecting TLR's communications with Texans for a Republican Majority Political Action Committee (TRMPAC) and its representatives, including the defendants in these appeals John Colyandro and Jim Ellis. In April 2004, as TLR's counsel, Justice Waldrop signed and filed pleadings on behalf of TLR objecting to the plaintiffs' requests, insisting that TLR had no information related to the plaintiffs' allegations, and referring to the plaintiffs' case as a "politically motivated lawsuit." In later pleadings, Justice Waldrop argued that plaintiffs and their counsel were "attempting to use the discovery process in this lawsuit to harass a political opponent," and he declared that TLR "would resist any attempts by plaintiffs to harass political opponents." All of the pleadings referenced in the State's motion were signed by Justice Waldrop as counsel for TLR. The State asserts—and it is uncontroverted—that the issues in the civil case centered around the same conduct now before us in the instant criminal proceedings and that Justice Waldrop filed pleadings "denigrating the case as 'politically motivated.'"

The rules of appellate procedure require a party to file a motion to recuse an appellate justice or judge "promptly after the party has reason to believe that the justice or judge should not participate in deciding the case." Tex. R. App. P. 16.3(a). The State asserts that it has complied with the rule to promptly file a motion to recuse because it "just discovered in the last few weeks" the grounds it now urges as the basis for Justice Waldrop's recusal. Although the State admits that it has known of Justice Waldrop's representation of TLR, the State seeks to recuse Justice Waldrop only from further participation in these appeals on a going forward basis. The State urges that it had no reason to question Justice Waldrop's impartiality until the Court's opinion in these proceedings was released and it then discovered the pleadings signed by Justice Waldrop that are the subject of this motion.

The language of our rules is clear and straightforward: the grounds for recusal of an appellate justice or judge are the same as those provided in the rules of civil procedure. Tex. R. App. P. 16.2. Texas Rule of Civil Procedure 18b provides that "[a] judge shall recuse himself in any proceeding in which . . . his impartiality might reasonably be questioned." Tex. R. Civ. P. 18b(2)(a). This language is mandatory, and the standard is objective, not subjective. *Id.* It calls upon the judge—in the first instance—to assess his impartiality. A reasonable doubt is resolved in favor of recusal.

As a supreme court justice who recused himself explained in *Rogers v. Bradley*, 909 S.W.2d 872, 873 (Tex. 2004) (Gammage, J.) (declaration of recusal), the problem is one of perception. When considering a motion to recuse, we should ask "whether a reasonable member of the public at large, knowing all of the facts in the public domain concerning the judge's conduct,

5

would have a reasonable doubt that the judge is actually impartial." *See id.* at 881 (Enoch, J., concurring). Applying this standard of reasonableness, based on this record, I conclude that Justice Waldrop should recuse himself from further participation in these appeals.

Justice Waldrop's conduct as a private litigator in the related civil proceedings is sufficient to cast a reasonable doubt as to his impartiality in these appeals. As a private attorney, Justice Waldrop represented a group that was aligned with and had similar interests with the defendants.[3] From the pleadings before us, it appears that his client was the subject of discovery requests in the related civil lawsuit. Justice Waldrop's representation was not unrelated to the proceedings now before us as it occurred in the civil proceedings arising out of the same conduct at issue in these appeals—namely, the alleged money laundering by a political action committee for the purpose of influencing Texas elections. It is Justice Waldrop's role as an advocate in those related proceedings—as well as the statements made in the pleadings—that call into question his impartiality in these appeals.[4]

By its motion, the State challenges the fundamental legitimacy of the adjudication. While the timing of the State's motion is troubling because it was made only after a decision was rendered, the rules contemplate that the motion must be raised "promptly after the party has reason

---

[3] Although the State has not sought to disqualify Justice Waldrop, this Court has previously held that a judge is subject to disqualification if he advised a person who is not a named party, but whose interests are so aligned with a named party that the one stands in place of the other. *See Williams v. Kirven*, 532 S.W.2d 159, 160-61 (Tex. Civ. App.—Austin 1976, writ ref'd n.r.e.).

[4] *Cf.* Tex. R. Prof. Conduct 1.06 (prohibiting lawyers from representing opposing sides in the same litigation); 1.10(e) (regarding successive government and private employment and prohibiting lawyer serving as public officer from participating in matter involving client that lawyer represented in private practice).

to believe that the justice or judge should not participate in deciding the case." In light of the panel reassignments and the inordinate delays in this Court's handling of these accelerated appeals, and in the absence of a response controverting the State's allegations, I can only conclude that the State has complied with the rule's requirement to raise its motion promptly.

Moreover, in the absence of any disclosure by a judge of his involvement in related litigation—either at the time the parties submit their case to a panel of judges or at any time to his colleagues to allow them to properly assess any impartiality or appearance of impartiality—it would not be appropriate to place this burden upon the parties. Indeed, disclosure at the outset would ensure the transparency necessary for the parties to assess any bias and then move for disqualification or recusal or to waive any objection.[5] Without disclosure of any kind, the burden of tracking down information falls to the litigants. It is unrealistic and surely undesirable for a litigant who is notified of the identity of three members of an appellate panel to whom a case is submitted to then *investigate* any possible ground for disqualification or recusal. In this case, given the relationship between the parties, surely disclosure of pertinent information would have resolved the dilemma before us now in some manner—either by resolution in a timely fashion that would have saved the parties time and money, or by waiver. Although such disclosure is not mandatory, the ABA Model Code of Judicial Conduct provides that a judge should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification. A judge's obligation not to hear or

---

[5] Rule 18b(5) provides that parties to a proceeding "may waive any ground for recusal after it is fully disclosed on the record." Tex. R. Civ. P. 18b(5).

decide matters in which there is a reasonable doubt concerning his impartiality applies regardless of whether a motion for recusal has been filed.

One of the hallmarks of our judicial system is judicial integrity. Judicial decisions rendered in the face of uncontroverted allegations of bias, prejudice, or favoritism, undermine the integrity of the courts and thwart the very principles on which our judicial system is based. *Sun Exploration & Prod. Co. v. Jackson*, 783 S.W.2d 202, 206 (Tex. 1989) (Spears, J., concurring on reh'g). Public policy demands that any judge who sits in a case act with absolute impartiality. *See Pendergrass v. Beale*, 59 Tex. 446, 447 (1883). Beyond this, our rules and judicial canons require that a judge also *appear to be* impartial, so as not to call into question the fairness or integrity of the court. *See* Tex. R. Civ. P. 18b(2)(a); Texas Code of Judicial Conduct, Canons 1 & 2. Even when the circumstances giving rise to the question of impartiality are beyond the judge's volition or control, judges and courts should be vigilant in protecting the integrity of our judicial system. The rules do not require proof that a judge engaged in any biased or prejudicial conduct, but they do require the judge to recuse himself if "his impartiality *might* reasonably be questioned." Tex. R. Civ. P. 18b(2)(a) (emphasis added). Thus, the test is not our own subjective impression of the judge's ability to discharge his duties in an impartial manner. Rather, the polestar is an objective assessment of impartiality and the appearance of impartiality.

Although the Court had written notice that I requested a response to the motion to recuse, and that I would write in dissent if we were not to request a response, this Court proceeded to deny the motion in a one sentence letter issued to the parties on October 8, 2008. In the absence of a response, and given the uncontroverted facts in the State's motion to recuse, I come to this

8

decision reluctantly, but I must conclude that on this record Justice Waldrop's impartiality has "reasonably be[en] questioned" and, for these reasons, I respectfully dissent from the denial of the motion to recuse.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson, Puryear, Pemberton and Henson

Filed:   December 31, 2008

Publish

9